CITY OF PHILADELPHIA, Edward G. Rendell, Mayor of the City of Philadelphia in his official capacity and as taxpayer, and Benjamin Hayllar, Director of Finance for the City of Philadelphia, and in his official capacity as a taxpayer

v.

FRATERNAL ORDER OF POLICE, LODGE NO. 5 and Philadelphia Fire Fighters Union Local 22 of the International Association of Fire Fighters.

International Association of
Fire Fighters, Local 22,
Appellant.

City of Philadelphia, Edward G. Rendell, Mayor of the City of Philadelphia in his official capacity and as taxpayer, and Benjamin Hayllar, Director of Finance for the City of Philadelphia, and in his official capacity as a taxpayer

v.

Fraternal Order of Police, Lodge No. 5 and Philadelphia Fire Fighters Union, Local 22 of the International Association of Fire Fighters.

Fraternal Order of Police Lodge
No. 5, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 1997.
Decided Jan. 26, 1999.

Ralph J. Teti and Thomas W. Jennings, Philadelphia, for appellants.

Richard Feder, Divisional Deputy City Sol., Philadelphia, for appellees.

Before COLINS, President Judge, and DOYLE, J., McGINLEY, J., SMITH, J., FRIEDMAN, J., and FLAHERTY, J.

DOYLE, Judge.

Before this Court are the consolidated appeals of Lodge No. 5 of the Fraternal Order of Police (FOP) and the Philadelphia Fire Fighters Union (FFU) (collectively, Appellants) from an order of the Court of Common Pleas of Philadelphia County that granted a Motion for Disposition on the Merits in favor of the City of Philadelphia, Mayor Rendell and Benjamin Hayllar, the Director of Finance for the City of Philadelphia (collectively, the City).

Prior to 1992, specified uniformed employees of the City who were injured in the line of duty were paid 100% of their gross predisability pay while on temporary disability. Thereafter, the United States Internal Revenue Service and the Commonwealth of Pennsylvania determined that these disability payments were not taxable as income. An arbitration panel convened pursuant to Act

111[1] after FOP and the City reached an impasse in negotiations, and an Interest Arbitration Opinion and Award was issued on March 23, 1993. This Award provided that injured police officers would be compensated at a rate of 75% of their base pay, with the effective dates retroactive to July 1, 1992, through June 30, 1996. The FFU and the City also reached an impasse in their negotiations and selected a panel of arbitrators, pursuant to Act 111, to mediate their dispute. The FFU's arbitration award, dated November 21, 1993, encompassed the same time period between July 1, 1992, through June 30, 1996, and also provided that injured fire fighters would be compensated at a rate of 75% of their base pay. The City subsequently voluntarily agreed to increase the rate of disability payment to 80% of pre-disability gross pay, effective June 1, 1994, through June 30, 1996. This appeal represents the culmination of two separate actions, one filed by the City and another filed by the Appellants.

In July 1995, the City filed a declaratory judgment action seeking judicial review of a statute recently enacted by the Pennsylvania General Assembly that modified the First Class City Home Rule Charter Act.[2] That statute, known as Act No. 5 of 1995,[3] had an effective date of August 1, 1995, and brought the uniformed officers of the City in line with the benefits enjoyed by officers throughout the rest of the Commonwealth through what is colloquially referred to as the Heart and Lung Act.[4] The City had previously been exempt from the provisions of the Heart and Lung Act as a result of the Supreme Court's decision in *Ebald v. Philadelphia* 387 Pa. 407, 128 A.2d 352 (1957), *aff'g on opinion of Common Pleas*, 7 D. & C.2d 179 (1957). The Heart and Lung Act governs disability payments for specified employees, mostly uniformed employees, placed on temporary disability resulting from a work-related injury and compensates disabled officers at their "full rate of salary."

The Appellants filed preliminary objections to the City's complaint, which were dismissed in a November 14, 1995 order of Common Pleas. In January 1996, Appellants filed their own separate action in mandamus, seeking an order to compel the City to comply with Act No. 5 and pay temporarily disabled uniformed employees 100% of their gross income. The trial court sustained the City's preliminary objections to Appellants' mandamus action in an order dated May 15, 1996. On June 3, 1996, the parties filed stipulated facts with the trial court succeeded by motions for disposition on the merits, and both the City and the Appellants then presented oral argument. In an order dated September 16, 1996, Common Pleas granted the City's request for declaratory judgment, holding that "[t]he City of Philadelphia is entitled to pay temporarily disabled police officers and fire fighters 80% of their normal gross salary, tax free, because such payments satisfy all requirements of the Heart and Lung Act...." (Trial Court's 10/16/96 Order, Reproduced Record (R.R.). at 6a.) Appellants filed timely appeals, and, in an opinion filed on February 3, 1997, the trial court opined that the City was subject to the provisions of the Heart and Lung Act but that an employee's net wages after taxes constituted the "full rate of salary" for purposes of that Act.

The essence of these appeals[5] addresses the issue of whether the Heart and Lung Act requires the City, specifically, and all local municipalities generally, to compensate eligible employees at 100% of their **gross pay** as the Appellants argue, or, as the City contends, 100% of the injured employee's take

---

1. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §217.1–.10.

2. Act of June 25, 1919, P.L. 581, *as amended*, 53 P.S. §§12101–22100.

3. Act of June 1, 1995, P.L. 45, *as amended*, 53 P.S. §13133(c).

4. Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637–638.

5. Our standard of review of a decision of a trial court is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court committed an error of law or an abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Holsten*, 150 Pa.Cmwlth. 1, 615 A.2d 113 (Pa.Cmwlth.1992).

home, or **net pay**. The City also makes several other arguments that hinge on this central issue. If this Court finds that the General Assembly intended the City to pay 100% of an employee's *gross* wages, the City then raises these additional issues: first, did the General Assembly violate the City's home rule charter powers; second, did the General Assembly intend to apply this requirement during the life of a pre-existing arbitration award; third, did the General Assembly violate the Constitution by requiring the City to increase the rate of compensation during the life of a collective interest arbitration award when that award provided for a lesser rate of compensation; fourth, did the General Assembly violate the Constitution by requiring the City to increase the rate of compensation during the life of an interest arbitration award when a provision of the award providing for a lesser rate of compensation had been previously upheld by a final court judgment; and, finally, may the Appellants challenge the City's policy of paying 100% of an injured employee's net pay when that policy was the product of the collective bargaining process and binding arbitration.

Act No. 5, which brought the City under the provisions of the Heart and Lung Act states, in pertinent part:

No city shall exercise any powers or authority beyond the city limits except such as are conferred by an act of the General Assembly, and no city shall engage in any proprietary or private business except as authorized by the General Assembly. **Notwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to, or in limitation or enlargement of, powers granted by acts of the General Assembly which are—**

. . . .

**(c) Applicable to all the cities of the Commonwealth, including, but not limited to, those acts providing for the disability compensation of police officers and firefighters.**

53 P.S. §13133 (emphasis added).

The central issue, therefore, is whether the provisions of the Heart and Lung Act require the City and other local municipalities to compensate injured employees at 100% of their gross pay, or 100% of their net pay. That Act provides:

(a) Any . . . policeman, fireman or park guard of any county, city, borough, town or township, who is injured in the performance of his duties including, in the case of firemen, duty as special fire police, and by reason thereof is temporarily incapacitated from performing his duties, **shall be paid . . . his full rate of salary,** as fixed by ordinance or resolution, until the disability arising therefrom has ceased. . . .

53 P.S. §637 (emphasis added). The City argues that the term "full rate of salary" constitutes the employee's net salary, not the employee's pre-tax gross salary. The City contends that the current view of the Commonwealth and the Internal Revenue Service, holding that such disability pay is not taxable as income, enables the City to compensate temporarily injured employees at their full rate of net pay. In support of this interpretation the City asserts that paying injured employees their gross salary would constitute a windfall to the injured employee, because the disabled employee would be able to net more money by being on disability than the employee would receive by working, thus providing an incentive for an employee to remain out of work on disability. The City states in its brief:

Neither Act No. 5 nor the Heart and Lung Act requires the City to pay police and firefighters more for not working than for working. Such a construction of legislative intent is, frankly, absurd.

. . . .

An employee's 'rate of salary' simply cannot be assessed or determined without examining the tax consequences.

. . . .

To construe the words 'full rate of salary' in precise and mindless lockstep with its original meaning in 1935, despite the undeniable change in circumstances, would be to ignore the intent of the General Assembly in favor of a rigid and unrealistic mode of statutory construction. The job of this Court is not to mindlessly apply the words of a statute, divorced from their true

meaning; but rather it is to enforce the intent of the legislature. (City's brief at 14–16.)

■ Although we certainly agree that the basic principle of statutory interpretation is to "enforce the intent of the Legislature," which in the first instance means to apply the plain meaning to the words of a statute, unless their meaning is ambiguous, we disagree with the rest of the City's view of this issue. The Heart and Lung Act is clear on its face that eligible employees are to be compensated at their "full rate of salary." When the language of a statute is clear, this Court must read the statute's provisions in accordance with their plain meaning and common usage. 1 Pa.C.S. §1903; *Department of Transportation, Bureau of Driver Licensing v. Lear*, 151 Pa.Cmwlth. 138, 616 A.2d 185 (Pa.Cmwlth.1992). An employee's salary is not normally calculated as an after-tax amount of compensation, but, rather, the amount of compensation the employer is prepared to pay for services rendered. The General Assembly is presumed to have been aware of the status of the federal Internal Revenue Code [6] and its impact on disability compensation benefits in 1995 when it passed Act No. 5 and subjected the City to the requirements of the Heart and Lung Act which has been applied uniformly to all uniformed officers throughout the entire Commonwealth, except Philadelphia, prior to the passage of Act No. 5. *Raymond v. Scranton School District*, 186 Pa.Super. 352, 142 A.2d 749 (Pa.Super.1958). By not amending the Heart and Lung Act to compensate employees at their net rate of salary, the General Assembly intended that such employees be compensated at their "full rate of salary," which in common usage refers to gross pay and is how the Heart and Lung Act has heretofore been applied uniformly throughout this Commonwealth. *See Schmidt v. Borough of Stroudsburg*, 670 A.2d 208 (Pa. Cmwlth.1996), *aff'd*, 547 Pa. 159, 689 A.2d 223 (1997); *Adams v. Lawrence Township Board of Supervisors*, 153 Pa.Cmwlth. 418, 621 A.2d 1119 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 536 Pa. 631, 637 A.2d 291 (1993).

In *Schmidt*, this Court had occasion to address the meaning of the term "salary" for purposes of the Heart and Lung Act. We made the determination:

> While we have never defined the term 'salary' for purposes of the Heart and Lung Act, we have defined the term 'salary' for the purpose of calculating retirement benefits under the Act of May 29, 1956, P.L. 1804, *as amended*, 53 P.S. §§767–778, authorizing municipalities to create police pension funds. In *Borough of Beaver v. Liston*, 76 Pa.Cmwlth. 619, 464 A.2d 679 (Pa.Cmwlth.1983), in distinguishing 'salary' from the more general term 'pay', we stated: " **'Salary' on the other hand, has a more restricted, specific meaning than 'pay' as a category of compensation. 'Salary' is a special type of compensation, where a fixed, stated amount is paid, periodically as by the year, quarter, month, week, or other fixed period.**" Because that definition is in the context of police benefits based on 'salary', **that definition is equally applicable in defining 'salary' for purposes of the Heart and Lung Act.**

*Schmidt*, at 209–10. (citations omitted) (emphasis added) (quoting *Liston*, 464 A.2d at 681).

■ We find the City's view of the term "salary," as the *net* amount of compensation an individual employee actually receives after taxes, to be unreasonable. Under the City's approach, an employer would be forced to determine the tax rate for each disabled employee receiving benefits in order to determine that specific employee's rate of disability compensation. This seems to present several difficult issues for both the employer and the employee: first, if an employee who files a tax return jointly with his or her spouse is taxed at a higher rate under the progressive taxation system, which tax rate should apply; second, would the employer be entitled to examine the income information of the employee's spouse; third, did the General Assembly intend that a married officer receive less or more than an unmarried officer; fourth, to whom would

---

6. 26 U.S.C. §104.

the employee and the spouse appeal an interpretation of the employee's tax rate? Additionally, an employee who has additional sources of income, such as spousal support, rental property, capital gains on investments or other such income, may likewise be taxed at a different rate than his fellow officers. Furthermore, employees, by contributing to such programs as individual retirement accounts and additional coverage medical plans, can lower their gross taxable income, thus affecting their net compensation. These situations represent only a sampling of the problems associated with the City's interpretation of an injured employee's "full rate of salary," meaning an employee's net pay.

Having found that "full rate of salary" refers to an employee's gross salary, we must then address the City's contention that Act No. 5 violates the Commonwealth's Constitution because it deprives the City of its right to exercise municipal power in an area of traditional local control, in violation of the Constitutional mandate of home rule.

Article 9, Section 2 of our Constitution states, in pertinent part:

A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time.

Pa. Const. art. 9, §2. Further, Section 17 the Home Rule Charter Act, entitled "General grant of power and authority," provides:

Subject to the limitations hereinafter prescribed, the city taking advantage of this act and framing and adopting or amending its charter thereunder shall have and may exercise all powers and authority of local self-government and shall have complete powers of legislation and administration in relation to its municipal functions, including the power and authority to prescribe the elective city officers, who shall be nominated and elected only in the manner provided by, and in accordance with, the provisions of the Pennsylvania Election Code and its amendments, for the nomination and election of municipal officers. The charter of any city adopted or amended in accordance with this act may provide for a form or system of municipal government and for the exercise of any and all powers relating to. its municipal functions, not inconsistent with the Constitution of the United States or of this Commonwealth, to the full extent that the General Assembly may legislate in reference thereto as to cities of the first class, and with like effect, and the city may enact ordinances, rules and regulations necessary and proper for carrying into execution the foregoing powers and all other powers vested in the city by the charter it adopts or by this or any other law. Ordinances, rules and regulations adopted under the authority of this act or under the provisions of any charter adopted or amended hereunder shall be enforceable by the imposition of fines, forfeitures and penalties, not exceeding three hundred dollars ($300), and by imprisonment for a period not exceeding ninety days.

53 P.S. §13131.

The City asserts that the issue of compensation for injured police officers and fire fighters is strictly a matter of local concern and cites the Supreme Court's holding in *Ebald*, for the proposition "that disability compensation for Philadelphia's uniformed personnel was subject to Philadelphia's control even though all other cities in the Commonwealth were governed by the Heart and Lung Act." (City's brief at 21.) The City places great emphasis on the decision of our Supreme Court in *Ebald* and contends that this Court cannot find in favor of the Appellants without overruling that decision, which the City correctly notes we lack the authority to do. Although this Court has no authority to overrule a decision of our Supreme Court, of course, the City ignores the fact that the General Assembly has the authority to legislatively override a decision of any court of this Commonwealth, including the Supreme Court, with regard to any benefit which is not constitutionally mandated or protected. The benefits associated with this appeal, whether under the Heart and Lung Act, Act No. 5 or through the collective bargaining agreement between the City and Appellants, are not specifically constitutionally protected rights, but, rather, are the product of legisla-

tive action by the General Assembly or by the City Council undertaken to effectuate public policy. This Court is not overruling *Ebald* ; we are merely effectuating the clear mandate of Act No. 5, which expressly subjects the City to the provisions of the Heart and Lung Act. It is the General Assembly which has, in effect, "overruled" *Ebald.*[7] The General Assembly has **now** said, in effect, that Heart and Lung Act benefits paid to eligible employees of the City **are** of statewide concern. It is the General Assembly, not this Court, which has played the trump card.

In 1991, the General Assembly, in enacting the Pennsylvania Intergovernmental Cooperation Authority Act for Cities of the First Class (PICA)[8] to address the fiscal difficulties of the City, declared the policy of the Commonwealth as follows:

> (a) **Policy.**— It is hereby declared to be a public policy of the Commonwealth to exercise its retained sovereign powers with regard to taxation, debt issuance and matters of Statewide concern in a manner calculated to foster the fiscal integrity of cities of the first class to assure that these cities provide for the health, safety and welfare of their citizens; pay principal and interest owed on their debt obligations when due; meet financial obligations to their employees, vendors and suppliers; and provide for proper financial planning procedures and budgeting practices. **The inability of a city of the first class to provide essential services to its citizens as a result of a fiscal emergency is hereby determined to affect adversely the health, safety and welfare not only of the citizens of that municipality but also of other citizens in this Commonwealth.**
>
> (b) **Legislative intent.**—
>
> (1) It is the intent of the General Assembly to:
>
> . . . .

(iii) foster sound financial planning and budgetary practices that will address the underlying problems which result in such deficits for cities of the first class, which city shall be charged with the responsibility to exercise efficient and accountable fiscal practices, such as:

. . . .

> (H) **review [the] compensation and benefits of city employees** . . . .

53 P.S. §12720.102 (emphasis added). The General Assembly enacted PICA four years before Act No. 5 was passed into law.

■ Having found that the compensation of temporarily disabled uniformed employees of the City constituted an issue of statewide concern, the General Assembly was clearly able to legislate on that topic. Act No. 5 was merely the vehicle the General Assembly chose to address this issue, and we find that the General Assembly did not violate either the Constitution or the Home Rule Charter Act in passing Act No. 5.

■ The City's remaining arguments deal with whether the City is obligated to retroactively apply the provisions of the Act to the collective bargaining agreements and arbitration awards between the City and the Appellants. The City correctly argues that a retroactive application of the Heart and Lung Act, as written, to the collective bargaining agreements and arbitration awards would be unconstitutional and would violate the law. Article 3, Section 26 of our Constitution provides:

> **No bill shall be passed giving extra compensation to any public officer, servant, employe, agent or contractor, after services shall have been rendered or contract made,** nor providing for the payment of any claim against the Commonwealth without previous authority of law: Provided, however, That nothing in this Constitution shall be construed to prohibit

---

7. See *Albert Einstein Medical Center v. Workers' Compensation Appeal Board (Perkins),* 707 A.2d 611 (Pa.Cmwlth.1998), and *Commonwealth of Pennsylvania v. State Conference of State Police Lodges,* 117 Pa.Cmwlth. 564, 546 A.2d 697 (Pa. Cmwlth.1988), *rev'd on other grounds,* 525 Pa. 40, 575 A.2d 94 (1990), where we discussed how

the General Assembly chose to legislatively override the decisions of courts within this Commonwealth.

8. Act of June 5, 1991, P.L. 9, *as amended,* 53 P.S. §§12720.101–.709.

the General Assembly from authorizing the increase of retirement allowances or pensions of members of a retirement or pension system now in effect or hereafter legally constituted by the Commonwealth, its political subdivisions, agencies or instrumentalities, after the termination of the services of said member.

Pa. Const. art. 3, §26 (emphasis added). Additionally, the Statutory Construction Act of 1972[9] presumes that a statute will not be retroactive in nature. Section 1926 states:

No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly.

1 Pa.C.S. §1926. Prior to the 1993 arbitration awards, the City and Appellants had entered into their collective bargaining agreements effective July 1, 1990, through June 30, 1992, the modified provisions of which became effective from July 1, 1992, through June 30, 1996, pursuant to the interest arbitration awards.[10] Act No. 5 became effective August 1, 1995. Because the General Assembly did not clearly intend that Act No. 5 apply retroactively to the contracts between the City and the Appellants, and because applying Act No. 5 in such a manner would violate the Constitution, we hold that Act No. 5 does not require the City to retroactively compensate temporarily injured uniformed employees at a rate of 100% of their gross pay.

■ Finally, we address the issue of whether the Appellants may challenge the City's policy of paying temporarily injured uniformed employees only 80% of their gross pay when that policy was the product of a unilateral agreement by the City, as a result of an award of a 75% rate of compensation to such employees, pursuant to the collective bargaining process and contrary to the intent of Act No. 5 as we have now declared it. We hold that the City and Appellants are bound by the arbitration decisions issued pursuant to their collective bargaining agreements. The law is well settled in this Commonwealth that, when parties agree to a collective bargaining agreement, courts are reluctant to disturb the bargained-for rights and duties assented to by the parties. As the Superior Court recognized in *American Telephone and Telegraph v. Clifford:* [11]

Union contracts generally obtain benefits and rights for union members which exceed those available at law in Pennsylvania, which applies the 'at will' doctrine of employer-employee relationships. As such, to protect these benefits, we have held that the contract is controlling when an issue is raised relating to employer-employee rights and duties. We should not deviate from that principle here.

*Id.,* 593 A.2d at 905–06. This Court also will not deviate from this principle. Accordingly, this Court finds that the Appellants are unable to challenge the City's policy of compensating temporarily disabled uniformed employees 80% of their gross pay for the duration of the subject collective bargaining agreements.

Accordingly, the order of Common Pleas is reversed. The City is required to compensate eligible uniformed employees at the rate of 75% of gross pay from July 1, 1992, through May 31, 1994; and, from June 1, 1994, through June 30, 1996, the City will compensate eligible uniformed employees at the rate of 80% of the employee's gross pay.

### ORDER

NOW, January 26, 1999, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matters is hereby reversed and the City will compensate eligible uniformed employees at the rate of 75% of their gross pay for the closed period of July 1, 1992 through May 31, 1994; and compensate said employees at the rate of 80% of their gross pay for the period from June 1, 1994 through June 30, 1996.

---

9. 1 Pa.C.S. §§1501–1991.

10. As indicated earlier, the FOP award was dated March 23, 1993, and the FFU award was dated November 21, 1993. Both awards were retroactive to July 1, 1992, and remained in effect through June 30, 1996.

11. 406 Pa.Super. 128, 593 A.2d 903 (Pa.Super.1991).