IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lehigh County,                                    :
                              Appellant    :
                                                  :
            v.                                    : No.  788 C.D. 2021
                                                  : Submitted:  September 11, 2023
Lehigh County Deputy Sheriffs'            :
Association (Emily Cordes HLA              :
Grievance)                                        :


BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION
BY JUDGE WALLACE                          FILED:  October 19, 2023


        Lehigh County (Employer) appeals from the June 15, 2021 order of the Court
of Common Pleas of Lehigh County (Common Pleas) that denied Employer's
Petition to Review and Vacate an Arbitration Award (Arbitration Award) issued by
Arbitrator Ralph H. Colflesh, Jr., Esquire (Arbitrator).  At issue is Employer's
dispute with Lehigh County Deputy Sheriffs' Association (Association) over
whether Employer violated the collective bargaining agreement (CBA) by deducting
leave time from Lehigh County Sheriff's Deputy Emily Cordes (Deputy Cordes)
while Deputy Cordes attended medical appointments to treat a work-related injury.
On appeal, Employer argues (1) Common Pleas erred by finding the Arbitrator's
Award drew its essence from the CBA and that Employer violated the CBA, and (2)

Common Pleas erred in finding the Arbitration Award did not violate public policy. After review, we affirm.

## BACKGROUND

The facts, as found by Arbitrator, are as follows and are not in dispute.[1] Employer's Sheriff's Department is responsible for functions including security and other services for Employer's courts. Reproduced Record (R.R.) at 51a. Deputy sheriffs carry out these responsibilities, and the Association represents them in collective bargaining. *Id.* The CBA sets forth the deputies' terms and conditions of employment and contains a grievance procedure for the resolution of disputes "concerning the interpretation, application or alleged violation of [the CBA]." *Id.*

On August 23, 2018, Deputy Cordes suffered a torn anterior collateral ligament while serving a warrant in the course of her work duties. *Id.* at 55a. After her injury, Deputy Cordes immediately returned to light-duty work until she had surgery on September 21, 2018. *Id.* Following her surgery, Deputy Cordes was off work until she returned to light-duty work on December 24, 2018. *Id.* While Deputy Cordes was off work, Employer paid her Heart and Lung Act[2] wage benefits. *Id.* After returning to light-duty work, Deputy Cordes continued treatment by attending outpatient rehabilitation, with some appointments occurring during her scheduled work hours. *Id.* On December 28, 2018, Employer electronically mailed (e-mailed) Deputy Cordes notifying her that she would be required to seek treatment for her

---

[1] An "arbitrator is authorized to make findings of fact to inform his interpretation of the CBA." *Millcreek Twp. Sch. Dist. v. Millcreek Twp. Educ. Support Pers. Ass'n*, 210 A.3d 993, 1006 (Pa. 2019). "An arbitrator's findings of fact are not reviewable on appeal, and as long as he has arguably construed or applied the collective bargaining agreement, an appellate court may not second-guess his findings of fact or interpretation." *Coatesville Area Sch. Dist. v. Coatesville Area Tchrs.' Ass'n/Pa. State Educ. Ass'n*, 978 A.2d 413, 415 n.2 (Pa. Cmwlth. 2009).

[2] Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637-638.

2

work-related injuries outside of her regularly scheduled work hours. *Id*. Despite Employer's announcement, Deputy Cordes continued to attend medical appointments during her scheduled work hours. *Id*. Thus, Employer charged her various amounts of accrued leave time for those medical appointments, and those deductions to her leave balances first appeared in her January 19, 2019 paycheck. *Id*.

On January 22, 2019, Deputy Cordes filed a hand-written grievance over Employer's decision (Grievance). *Id*. In her Grievance, Deputy Cordes stated her belief that "all time used for any appointments that are doctor ordered should [have been] covered/approved under Heart and Lung [b]enefits until [she was] cleared to return to work in the capacity in which [she] left, [full time], full duty and in uniform." *Id*. at 56a. The Grievance requested that Employer reinstate all time it deducted and for Employer to provide Deputy Cordes with full pay for all future appointments that occurred during her scheduled work hours. *Id*. The Association submitted a formal document to Employer's Human Resources Office on Association letterhead, which specifically referenced a violation of Article XXXVI of the CBA, which incorporates Employer's Heart and Lung Act Implementation Policy (Policy) into the CBA. *Id*. Employer denied the Grievance throughout the pre-arbitration grievance procedure. *Id*.

Arbitrator held a hearing on October 2, 2019. Arbitrator issued the Arbitration Award in favor of the Association on December 6, 2019, concluding the Grievance was timely and substantively arbitrable, and Employer violated the CBA. Arbitrator found Employer violated the CBA when it deducted time from Deputy Cordes' leave balance for scheduled duty time she used to receive medical treatment for her work-related injury. *Id*. at 64a. Specifically, regarding arbitrability, Arbitrator referenced

the Policy's procedural provisions, which require that if an employer denies Heart and Lung Act benefits, the employee is to receive a written decision explaining the basis for that decision. Arbitrator concluded that

> [u]nder a plain language reading of the [Heart and Lung Act], which itself is incorporated into the [CBA] through its reference in the Policy, Deputy Cordes was [a Heart and Lung Act] beneficiary at all times material to this case . . . . The [Heart and Lung Act] mandates benefits "until the disability arising [from the qualifying injury] has ceased." [Section 1 of the Heart and Lung Act,] 53 [P.S. §] 637[(1)(a)(12)]. By the Deputy's doctor's declaration of December 20, 2018[,] . . . and [Employer's] placement of her on light duty rather than the more demanding warrant unit where she worked prior to her injury, [Employer] acknowledged she still had what the [Heart and Lung Act] terms a "disability." In summary, there was no predicate for any appeal to a local agency hearing as per the Policy. Accordingly, the Policy's local agency requirement is not applicable to this dispute and the grievance cannot be preempted under the Policy.

*Id*. at 60a-61a.

In addressing whether Employer violated the CBA, Arbitrator noted the Heart and Lung Act is "most certainly a remedial statute, one passed to assist those public servants who fill the most dangerous jobs in our Commonwealth." *Id*. at 62a. Arbitrator reasoned that because the Heart and Lung Act mandates "full rate of salary" be paid to disabled employees, *see* 53 P.S. § 637, Employer cannot "off-load its treatment obligations onto employee's private, non-duty time." *Id*. at 63a. Arbitrator based his conclusion on the CBA and the Heart and Lung Act, which is incorporated into the CBA through the Policy. *Id*.

On January 3, 2020, Employer filed a petition to review and vacate the opinion and award of Arbitrator with Common Pleas. R.R. at 3a-27a. Common Pleas denied Employer's petition for review and affirmed the Arbitration Award. *Id*. at 394a-417a. Regarding arbitrability, Common Pleas concluded Arbitrator correctly found

4

the matter arbitrable because "the Association and Deputy Cordes [were] not challenging a denial or termination of [Heart and Lung Act b]enefits that would potentially result in a local agency hearing; the alleged violation of the CBA at issue [was] the fact that [Employer] forced Deputy Cordes to use her own leave benefits for medical appointments related to her work-related injury." *Id.* at 398a. Additionally, Common Pleas pointed out that

> [i]nasmuch as Deputy Cordes, as a matter of law, was still covered by the [Heart and Lung Act], . . . the alleged violation at issue is the fact that [Employer] was forcing Deputy Cordes to use her own leave benefits for medical appointments related to her work-related injury. The broad language of the definition of grievance found in the CBA – "a dispute concerning the interpretation, application or alleged violation of this Agreement" - makes it clear that the instant dispute is within that definition. How someone is to be paid when they miss work due to a job injury while working light duty is clearly a dispute concerning the interpretation, application or alleged violation of the CBA.

*Id.* at 411a-12a. Common Pleas concluded that because Heart and Lung Act benefits were not denied or terminated, the requirements to appeal to the designated hearing board or local agency were not triggered. *Id.* Consequently, whether Employer should have deducted Deputy Cordes' leave benefits was an issue properly before Arbitrator. *Id.* at 400a. Regarding the merits, Common Pleas explained:

> In this Court's view and consistent with the Arbitrator, full rate of salary includes the employee's gross salary without any deductions for specific hours missed from work for work-related medical treatment. Deducting from an employee's leave time to care for an injury for which [Employer] has a continuing responsibility to repair and which was incurred in service to [Employer] runs counter to the purpose of the [Heart and Lung Act]. Consequently, [Employer] violated the CBA, by mandating that Deputy Cordes use leave benefits for physical therapy and medical appointments for her work-related injury. Therefore, the Court finds that the Arbitrator did not exceed his powers

5

in finding the Grievance substantively arbitrable and finding that [Employer] violated the [CBA].

*Id*. at 402a. Regarding Employer's assertion that the Arbitration Award violates public policy, Common Pleas concluded "Deputy Cordes did not receive benefits beyond her full rate of pay or those provided for in the [Heart and Lung Act]. The Arbitrator awarded Deputy Cordes her full salary authorized by the [Heart and Lung Act] and not in violation of public policy." *Id*. at 404a.

Employer now appeals Common Pleas' decision to this Court. On appeal, Employer asserts (1) Common Pleas erred by finding the Arbitration Award drew its essence from the CBA; (2) Common Pleas erred by finding Employer violated the CBA when the CBA requires Heart and Lung Act matters to be heard before a local agency tribunal; and (3) Common Pleas erred by finding the Arbitration Award did not violate public policy when the Heart and Lung Act only provides for payment of medical and hospital bills and does not provide compensation or other benefits to attend medical appointments. Employer's Br. at 5, 11-19.

In response, the Association argues the Grievance was substantively arbitrable as it fell within the definition of grievance outlined in the CBA. Association's Br. at 11. Additionally, the Association asserts Employer violated the CBA when it deducted leave benefits from Deputy Cordes when her work-related disability had not ceased nor had her benefits been properly terminated consistent with her due process rights. *Id*. at 22. Finally, the Association contends neither Arbitrator nor Common Pleas violated any established public policy in issuing their decisions and, to the contrary, their decisions are consistent with public policies as articulated by our courts. *Id*. at 26.

**DISCUSSION**

Our standard of review of labor arbitration awards under the Public Employe Relations Act (PERA)[3] is the "essence test." *Cent. Dauphin Sch. Dist. v. Cent. Dauphin Educ. Ass'n*, 767 A.2d 16, 18-19 (Pa. Cmwlth. 2001). Under the essence test, we must first determine if the issue is encompassed within the terms of the CBA. *Id.* If so, we will uphold an arbitrator's award provided the arbitrator's interpretation may be rationally derived from the CBA. *Id.* at 18-19. The Pennsylvania Supreme Court has explained that the essence test requires

> an arbitrator's interpretation be upheld if it can, in *any rational way*, be derived from the language and context of the agreement. When an issue, properly defined, is within the terms of a collective bargaining agreement and the arbitrator's decision can in a rational way be derived from the terms of the agreement, one can say that the decision draws its "essence" from the agreement, and reversal is not warranted even if a court believes that the decision, though rational, is incorrect.

*Delaware Cnty. v. Delaware Cnty. Prison Emps. Indep. Union*, 713 A.2d 1135, 1137 (Pa. 1998) (citation omitted). Further, the Court noted in *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999), a court should "only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." The essence test applies equally to our review of an arbitrator's threshold determinations of the legal enforceability of a CBA, as well as the jurisdiction of the arbitrator. *Fayette Cnty. Bd. of Comm'rs v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 84*, 692 A.2d 274 (Pa. Cmwlth. 1997).

---

[3] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

First, we address Employer's assertion that Common Pleas erred by finding Arbitrator's Award was arbitrable as it drew its essence from the CBA. It is well established that an arbitrator has jurisdiction to decide the arbitrability of an issue. *Wattsburg Area Sch. Dist. v. Wattsburg Educ. Ass'n, PSEA/NEA*, 884 A.2d 934, 937 (Pa. Cmwlth. 2005). Additionally, we give broad deference to an arbitrator's determinations regarding the arbitrability of the subject matter of a grievance. *Scranton Fed'n of Tchrs., Local 1147, AFT v. Scranton Sch. Dist.*, 444 A.2d 1144, 1147 (Pa. 1982).

Here, Arbitrator concluded the Association's Grievance was premised on the CBA and its incorporation of the Heart and Lung Act through the Policy. Specifically, Arbitrator determined that Heart and Lung Act benefits were never denied by Employer, and, therefore, there was no basis for Deputy Cordes to appeal a denial of benefits via the Local Agency Law[4] as provided for in the Policy. Rather, Arbitrator determined Deputy Cordes was entitled to her "full rate of salary" due to her disability under the Heart and Lung Act, which was incorporated into the CBA, and, thus, it was a violation of the CBA for Employer to deduct leave time for her medical appointments treating for work-related injury.

Deputy Cordes' terms of employment, including her salary and benefits, are encompassed within the CBA. Additionally, the Heart and Lung Act is incorporated into the CBA via the Policy. As Arbitrator correctly pointed out, the issue is not a denial of Heart and Lung Act benefits to Deputy Cordes, which would have triggered an appeal via Local Agency Law. Rather, the issue is whether Employer violated the CBA by deducting leave time from Deputy Cordes for her medical appointments during work hours. As this issue is clearly encompassed within the terms of the

---

[4] 2 Pa. C.S. §§ 551-555, 751-754.

CBA and Arbitrator's interpretation was rationally derived from the CBA, Arbitrator's Award passes the essence test. Accordingly, Common Pleas did not err in this regard.

Next, we address Employer's assertion that Common Pleas erred by finding Employer violated the CBA. Article XXX of the CBA outlines the grievance procedure and defines a grievance as a "dispute concerning the interpretation, application or alleged violation of [the CBA]." R.R. at 95a. Article XXXVI of the CBA incorporates the Policy into the CBA. *Id*. at 99a. The Policy provides the Heart and Lung Act governs all rights to such benefits. In relevant part, the Policy outlines that if an employee is denied Heart and Lung Act benefits, the employee is to be provided a written decision explaining the basis for that determination. *Id*. at 112a. Should the employee decide to challenge the denial of benefits, the appeal and subsequent proceedings are to be heard pursuant to the dictates of the Local Agency Law.

> Section 1 of the Heart and Lung Act provides, in relevant part,
>
> [a]ny sheriff or deputy sheriff . . . who is injured in the performance of his duties . . . and by reason thereof is temporarily incapacitated from performing his duties, shall be paid . . . his full rate of salary . . . until the disability arising therefrom has ceased.

53 P.S. § 637. While the Heart and Lung Act does not define "full rate of salary," this Court has held contractual interpretation determines its meaning. *Coyne v. Cnty. of Allegheny*, 566 A.2d 378 (Pa. Cmwlth. 1989). We have also determined it includes an employee's gross salary without deductions. *City of Phila. v. Fraternal Ord. of Police, Lodge No. 5*, 723 A.2d 747 (Pa. Cmwlth. 1999).

As Common Pleas rightly pointed out in its Opinion, "the Association and Deputy Cordes are not challenging a denial or termination of [Heart and Lung Act

9

b]enefits that would potentially result in a local agency hearing." R.R. at 398a. Rather, Deputy Cordes was employed pursuant to and bound by the terms and conditions of the CBA. In addition, Deputy Cordes' rate of salary and benefits were defined in the CBA. As Heart and Lung Act benefits are based on Deputy Cordes' rate of salary, which was set forth in the CBA, it follows that Common Pleas did not err when it found that the Heart and Lung Act benefits were a term and condition of Deputy Cordes' employment under the CBA. Moreover, the parties agreed in the CBA to resolve disputes regarding the interpretation, application, or alleged violation of the CBA through the grievance resolution process.

This dispute involves Heart and Lung Act benefits as they relate to a term and condition of Deputy Cordes' employment. Specifically, it involves the allegation that Employer inappropriately deducted leave time from Deputy Cordes while she was receiving Heart and Lung Act benefits. Therefore, this issue was appropriately resolved according to the grievance resolution process defined in the CBA. Thus, we conclude Common Pleas did not err in this regard.

Finally, we consider Employer's assertion that the Arbitration Award violates public policy. Despite our judicial deference to an arbitrator's arbitration award, the United States Supreme Court has recognized that courts should not enforce an arbitration award that contravenes public policy. *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 939 A.2d 855, 861-63 (Pa. 2007) (citing *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers,* 461 U.S. 757, 766 (1983)). As the United States Supreme Court pointed out in *W.R. Grace & Co.*, 461 U.S. at 766, while the court will not enforce a contract which violates public policy, the public policy must be "well defined and dominant and is to be ascertained 'by

10

reference to the laws and legal precedents and not from general considerations of supposed public interest.'" *Id*. (quoting *Muschany v. United States*, 324 U.S. 49 (1945)). "Where a contract, as interpreted by an arbitrator, violates explicit public policy, the award cannot be enforced." *Id*. Further, the "violation of such a policy must be clearly shown if the award is not to be enforced." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43 (1987).

In *Millcreek Township School District v. Millcreek Township Educational Support Personnel Association*, 210 A.3d 993, 1011 (Pa. 2019), the Pennsylvania Supreme Court outlined the applicable analysis as follows:

> [N]ot only is the public policy exception "exceptionally narrow" in its own right, *Phila*[*delphia Housing Authority v. American Federation of State, County, and Municipal Employees, District Council 33, Loc*[*al*] *934*], 52 A.3d [1117, 1125 (Pa. 2012)] (quoting *Westmoreland*, 939 A.2d at 868 (Saylor, C.J., concurring)), but it is also an exception to the essence test, which is itself a narrow exception to the doctrine that arbitration awards are final and binding. *See Cheyney*, 743 A.2d at 413. A baseline recognition that the public policy exception is a narrow exception to a narrow exception must guide a reviewing court's analysis.

> Guided by this standard of review and our precedent identifying the public policy exception, we advance a three part test. First, a reviewing court must identify precisely what **remedy** the arbitrator imposed. *Westmoreland*, 939 A.2d at 865-66 (urging that "a court should not enforce a grievance arbitration **award** that contravenes public policy"). Next, the court must inquire into whether that remedy implicates a public policy that is "well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.* at 866. Finally, the reviewing court must determine if the arbitrator's award compels the employer to violate the implicated policy, given the particular circumstances and the factual findings of the arbitrator. We emphasize that the arbitrator's interpretation of the contract controls during this entire analysis, which is only triggered upon the reviewing court's

11

determination that the award satisfies the essence test, and should be upheld absent a clear violation of public policy. *Id.* at 864. The burden is on the party that opposes the award to demonstrate that it violates public policy. *Id.* at 865.

*Id.*

Here, Employer asserts the Arbitration Award violates public policy because the "Heart and Lung Act only provides for payment of medical and hospital bills and does not provide compensation or other benefits to <u>attend</u> medical appointments." Employer's Br. at 19 (emphasis in original). The Association asserts Employer has not met its burden of demonstrating the Arbitration Award violates public policy as the remedy imposed by Arbitrator was narrowly tailored to provide Deputy Cordes her full salary, which is appropriate given the violation. Additionally, the Association asserts requiring Deputy Cordes to use her accrued leave time would defeat the goal of the Heart and Lung Act as its promise of full compensation would be illusory. We agree with the Association.

The purpose of the Heart and Lung Act is to provide important public safety personnel with full compensation while the personnel are temporarily disabled with work-related injuries. *Organ v. Pa. State Police*, 535 A.2d 713 (Pa. Cmwlth. 1998). The Arbitrator imposed a remedy simply providing Deputy Cordes receive her full salary, without deductions, for the time she was obtaining medical treatment for her work-related injury. Contrary to Employer's assertion, this is in furtherance of the purpose of the Heart and Lung Act, as well as public policy. Employer failed to meet its burden of demonstrating Arbitrator's Award presents a clear violation of public policy. Therefore, Common Pleas did not err in this regard.

## CONCLUSION

In conclusion, Common Pleas did not err when it declined to vacate Arbitrator's Award. Additionally, Common Pleas did not err by affirming

12

Arbitrator's decision that Employer violated the CBA when it deducted leave time from Deputy Cordes while she attended appointments to treat for her work-related injury. Finally, Common Pleas properly concluded the Arbitration Award did not violate the narrow public policy exception. Given our deferential standard of review, we affirm Common Pleas' decision affirming the Arbitration Award.

_____
STACY WALLACE, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lehigh County,                          :
                           Appellant    :
                                        :
            v.                          : No.  788 C.D. 2021
                                        :
Lehigh County Deputy Sheriffs'          :
Association (Emily Cordes HLA            :
Grievance)                              :


# **O R D E R**


    **AND NOW**, this 19th day of October 2023, the June 15, 2021 order of the
Court of Common Pleas of Lehigh County is **AFFIRMED**.


 

_____
STACY WALLACE, Judge