## Turcmanovich v. Borough of Lansford

C.P. of Carbon County, no. 00-2145.

*Sean T. Welby,* for petitioner.
*Joseph J. Matika,* for respondent.

LAVELLE, *S.J.,* June 5, 2001—John Turcmanovich seeks review of a decision by the Borough of Lansford which denied him benefits under the Heart and Lung Act.[1]

In his petition for review, Turcmanovich sets forth four assignments of error: (1) that the borough's adjudication is not supported by substantial evidence in the record and capriciously disregards undisputed evidence; (2) that the borough impermissibly commingled functions in the administrative process; (3) that the adjudication is defective because it failed to include findings of fact, conclusions of law and reasons for the decision; and (4) that the borough committed errors of law.

## FACTUAL BACKGROUND

Before addressing the merits of the within appeal, it will be helpful to summarize the factual background of this claim.

Our review of the record reveals that Turcmanovich had been employed for the past 27 years as a police officer by the Borough of Lansford. (NT, 8-9.) Approximately, four years ago, he was diagnosed as having Type II diabetes mellitus, which he controls through the use of orally administered medication. (NT, 9, report of Carmine J. Pellosie D.O.)

Prior to the incident giving rise to the instant claim, Turcmanovich had a long history of foot problems, including ulcers and infections secondary to his diabetic condition, as well as a motor sensory deficit caused by hereditary neuropathy. (NT, 9, 24-25, reports of Drs. Gary S. Greenberg and Carmine J. Pellosie.) He was under the care of Dr. Gary S. Greenberg, a podiatrist,

1. 53 P.S. §637

who regularly treated him for his foot problems on a preventive basis. *(Id.)* Although he had long-standing problems with foot ulcers prior to the instant claim, they always healed with medication within a few days and never resulted in lost time from work. (NT, 24-25.)

On October 19, 1999, Turcmanovich was seen by Dr. Greenberg for follow-up for "[a] long history of ulcers, osteomylitis and gross foot deformity," on which visit a grade 2 ulcer was detected under his first right metatarsal. (NT, 24-25; Dr. Greenberg's progress notes.) At his next office visit on December 21, 1999, Dr. Greenberg noted that there was no ulcer under the first right metatarsal; in other words, the ulcer detected on October 19 had completely healed. *(Id.)*

On Saturday, December 25, 1999, Turcmanovich worked the 7 a.m. to 3 p.m. shift, which involved routine traffic and community patrol, a limited amount of foot patrol through the business district, and response to a vandalism report; because it was Christmas day, it was relatively quiet. (NT, 9-10, 15-18.) When he returned home after completing his shift, Turcmanovich removed his shoes and observed that his right sock was soaked with blood and the inside of his shoe was stained with blood or a blood-like fluid. (NT, 11.) This was his first indication that day that there was a problem with his foot. (NT, 28-29.) He cleaned his foot with peroxide and bandaged it. *(Id.)* When the foot did not heal, he called Dr. Greenberg's office first thing on Monday morning and was told to come in to see the doctor that same day. (NT, 12.)

On examining Turcmanovich, Dr. Greenberg observed a four centimeter square "elevated bibulous lesion proximal to the first metatarsal head . . . [with] what appears

to be a small puncture-like wound," and further noted that the wound was infected. (Dr. Greenberg's office notes.) On February 14, 2000, after several weeks of treatment with no apparent improvement, Turcmanovich was admitted to St. Luke's Hospital for intravenous administration of antibiotics. (Dr. Greenberg's office notes; report of Dr. Pellosie.) As of the date of the hearing, he had still not returned to work and remained disabled.

At the time of the independent medical examination held on June 21, 2000, Turcmanovich's ulcer had still not healed and he was scheduled to undergo a skin graft. (Report of Dr. Pellosie.)

Dr. Greenberg, in a progress note entered on April 11, 2000, recounts that Turcmanovich advised him that he had a discussion with an organization representing police officers and discovered that he may be eligible for benefits. The note continues:

"For that reason information related to the onset of his current problem is reviewed and clarified. The patient was on vacation for a time period prior to working a shift on Christmas day . . . . Upon returning home, removing his shoes he noticed blood in his sock, drainage and swelling on his right foot. One would then presume that some activity at work was the precipitating cause of his current problem. This information was not deemed relevant at his 12/27/99 examination."

Dr. Pellosie, the borough's physician, opined that "within a reasonable degree of medical certainty, it is *possible* that his blister (foot injury) began during his work shift on 12/25/99." (emphasis added) Dr. Pellosie also noted that there was no clear date of injury set forth in Dr. Greenberg's office records and that Turcmanovich

waited four months before filing his claim. Other than the reports of Drs. Greenberg and Pellosie, no medical testimony was submitted by either party.

## DISCUSSION

Because we have a complete record of the hearing conducted by the borough and we have taken no additional testimony in this matter, our scope of review is circumscribed by section 754(b) of the Local Agency Law.[2] We must affirm the adjudication below unless it violates appellant's constitutional rights, is not in accordance with law, or if any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. *City of Pittsburgh v. Kisner,* 746 A.2d 661 (Pa. Commw. 2000); *McLaughlin v. Pennsylvania State Police,* 742 A.2d 254 (Pa. Commw. 1999).

With this narrow scope of review in mind, we now address Officer Turcmanovich's assignments of error. His first argument is that the borough's adjudication is not supported by the record and that it capriciously disregarded undisputed competent evidence in the record.

The sole issue before the borough was whether Turcmanovich's foot ulcer and resulting disability arose in the course of his duties as a police officer. The only evidence presented on this issue was Turcmanovich himself, Dr. Gary Greenberg, his treating podiatrist, and Dr. Carmine J. Pellosie, an occupational medicine specialist, who conducted an IME on behalf of the borough. The doctors' evidence was received in the form of records and reports. This evidence produced the following incontrovertible facts:

_____

2. 2 Pa.C.S. §754(b).

(1) Turcmanovich, a 27-year veteran of the borough's police force, had a diabetic condition for some three and one half to four years prior to the injury in question.

(2) Although he had suffered from foot ulcers in the past, they always responded to treatment and never resulted in lost time from work.

(3) Although he experienced an ulcer two months prior to the incident in question, that ulcer had completely healed when he saw Dr. Greenberg for a routine visit on December 21, 1999.

(4) Upon completing his shift on Christmas Day, 1999, Turcmanovich removed his shoe and noticed that his sock was soaked with blood; this was his first indication that day that there was a problem.

(5) When the foot did not heal by Monday, December 27, he consulted with Dr. Greenberg.

(6) Dr. Greenberg diagnosed a four centimeter lesion and a small, infected, puncture-like wound, which the doctor opined was precipitated by work-related activity.

(7) Upon examining Turcmanovich on behalf of the borough, Dr. Pellosie stated that it was "possible that his . . . foot injury began during his work shift on 12/25/ 99."

In its adjudication denying claimant benefits, the borough noted that it was "skeptical with regard to the claimant's testimony" because:

"(1) claimant delayed filing a claim for benefits until four months after the date of the alleged injury;

"(2) in his progress notes, Dr. Greenberg failed to record any reference to a work-related injury until after Turcmanovich told him that he might be eligible for Heart and Lung benefits; and

"(3) when Turcmanovich presented to Chief Stawiarski a doctor's note placing him off work, claimant did not indicate to the chief that his foot problem was work-related."

It is obvious, then, that resolution of Turcmanovich's claim turns solely on a determination of the credibility of the witnesses, namely that of the claimant himself and the medical testimony (via records) of Drs. Greenberg and Pellosie.

Questions of credibility of witnesses are to be determined solely by the local agency, and as a reviewing court we are not permitted to substitute our own judgment for that of the borough. *Richter v. Civil Service Commission of the City of Philadelphia,* 35 Pa. Commw. 310, 387 A.2d 131 (1978). Generally, we must affirm the local agency if its findings of fact are supported by substantial evidence.

While Dr. Greenberg did not note in his office chart any causal connection between the foot ulcer and his employment until Turcmanovich advised him, some four months after the onset of disability, that he might be eligible for Heart and Lung benefits, Dr. Greenberg indicated that he did not mention this earlier because he did not believe it was relevant. Nonetheless, the borough chose to discredit Dr. Greenberg's testimony in its entirety. The opinion of Dr. Pellosie, the borough's physician, was inconclusive as to the cause of Turcmanovich's foot ulcer. Dr. Pellosie stated only that it was "possible" that it was related to his work.

The borough, as the trier of fact, was free to credit or discredit any testimony in whole or in part, even though such testimony was uncontroverted and even though it was expert medical testimony. *Gwinn v. Pennsylvania State Police,* 668 A.2d 611 (Pa. Commw. 1995); *Adamo v. W.C.A.B. (Jameson Memorial Hospital),* 87 Pa.

Commw. 207, 486 A.2d 1065 (1985). However, this does not mean that the borough may *capriciously* disregard otherwise competent evidence. Where, as here, the party with the burden of proof is the only party to present evidence and he loses, the standard of review to be employed is whether the fact-finder capriciously disregarded competent evidence. *Czap v. W.C.A.B. (Gunton Corp.),* 137 Pa. Commw. 612, 587 A.2d 49 (1991).

The only testimony presented on the issue of the work-related nature of Turcmanovich's injury was that of Dr. Greenberg. Dr. Pellosie, the borough's physician, said only that it was possible that the injury was work-related, so that Dr. Greenberg's medical opinion stands as unrebutted.

The adjudication filed by the borough does not explain why it chose to discredit Dr. Greenberg's testimony. The borough observes that "had the injury been sustained in the performance of his [Turcmanovich's] duties, he would have so noted to the doctor on December 27, 1999." (Adjudication, finding of fact no. 6.) The borough also states, as a finding of fact, that "the agency does not believe that the injury as alleged . . . could have occurred as a result of the limited amount of foot patrol he provided on the date in question." (Adjudication, finding of fact no. 5.) There is absolutely no factual basis in the record before us to support these two critical findings. Although Turcmanovich may not have been prompt in filing his Heart and Lung claim, we cannot say that a four-month delay is unreasonable, particularly in the absence of any limitation period in the Act. We do not believe that this had any probative value on the question of Turcmanovich's credibility.

Likewise, there is absolutely no factual basis in the record to support the borough's conclusion that Turcmanovich's injury could not "have occurred as a result

of the limited amount of foot patrol he provided on the date in question." In making this finding, the borough substituted its own medical opinion in place of the unrebutted expert opinion of Dr. Greenberg, and in doing so it capriciously disregarded competent evidence in the record.

Since this appeal has been resolved on the basis of the capricious disregard of evidence test, there is no need to address the remaining issues raised by Turcmanovich.

For the reasons set forth above, we reverse the adjudication denying John Turcmanovich benefits under the Heart and Lung Act and enter the following order:

## ORDER

And now, June 5, 2001, upon consideration of the within petition for review, the record of the proceedings before the Lansford Borough Council, the briefs and other submissions of the parties, and after oral argument, it is hereby ordered and decreed that the petition for review be, and the same hereby is, sustained, and the adjudication of the Borough of Lansford dated October 5, 2000, is reversed. Petitioner's claim under the Heart and Lung Act, 53 P.S. §637, is hereby granted.