**Rodney L. GWINN, Petitioner,**

v.

**PENNSYLVANIA STATE POLICE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1995.
Decided Dec. 11, 1995.

James L. McAneny, for petitioner.

Patricia J. Bartkowiak, for respondent.

Before DOYLE and McGINLEY, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

Trooper Rodney Gwinn appeals an order by the Commissioner of the Pennsylvania State Police (Commissioner) discontinuing Gwinn's Heart and Lung Act[1] benefits retroactive to February 24, 1994.

On December 13, 1992, Gwinn sustained a back injury during the course of his employment when he slipped and fell on ice while investigating a motor vehicle accident. Thereafter, he was approved for benefits under both the Heart and Lung Act and the Workers' Compensation Act.[2] During the following months, the Pennsylvania State Police (PSP) ordered Gwinn to submit to several independent medical examinations (IMEs) for which Gwinn failed to appear.[3]

On February 24, 1994, Gwinn submitted to an IME conducted by Dr. Paul Richter, a neurosurgeon, who released Gwinn to return to full duty and concluded that Gwinn was malingering. On March 8, 1994, PSP ordered Gwinn to return to full duty effective March 11, 1994. Gwinn, however, did not return to work on that date and, effective March 15, 1994, Gwinn was processed by PSP as a "voluntary resignation" by reason of abandonment.

Subsequently, PSP reinstated Gwinn, restoring his Heart and Lung Act Benefits retroactive to March 11, 1994.[4] On May 19, 1994, PSP initiated proceedings to terminate Gwinn's Heart and Lung Act benefits. A hearing was held before an arbitrator on August 19, 1994 to determine whether Gwinn was able to return to work because his disability had ceased. During the termination hearing, evidence of Gwinn's failure to attend scheduled IMEs, records of Workers' Com-

---

1. Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–38.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4.

3. Petitioner was ordered to appear at the State Police Academy in Hershey, Pennsylvania, for an IME on April 29, 1993, but failed to appear. IMEs were subsequently scheduled on May 3, 1993, and May 27, 1993, which were cancelled by Petitioner who stated that he could not drive. Thereafter, Petitioner also failed to attend IMEs scheduled for June 8, June 25, October 18, and December 1 of 1993. Petitioner finally attended an IME on February 11, 1994 at which time, Dr.

Richter released him to full duty as a state trooper. (Commissioner's Adjudication, Findings of Fact Nos. 7–23.)

4. After Gwinn was discharged for failing to report to work, the Pennsylvania State Troopers' Association, on behalf of Gwinn, filed suit in this Court alleging PSP improperly terminated Gwinn's Heart and Lung Act benefits without affording him a due process hearing. Subsequently, PSP reinstated Gwinn, retroactively reinstated his Heart and Lung Act benefits and scheduled a termination hearing. Accordingly, the law suit was dismissed.

pensation hearings and Gwinn's disciplinary records were admitted over Gwinn's objection.

Thereafter, the arbitrator issued a Proposed Report dated November 14, 1994, recommending the termination of Gwinn's benefits to which Gwinn filed exceptions. On January 12, 1995, the Commissioner issued a final adjudication retroactively terminating Gwinn's Heart and Lung Act benefits to February 24, 1994. This appeal followed.

On appeal, Gwinn argues: (1) the Commissioner violated Gwinn's constitutional rights by retroactively terminating his Heart and Lung Act benefits; (2) evidence concerning attempts to schedule medical examinations and Gwinn's disciplinary record were erroneously admitted in the termination proceeding; and (3) the Commissioner's adjudication was not supported by substantial evidence.

### RETROACTIVE TERMINATION

█ The Heart and Lung Act provides police officers and firefighters with full compensation when they are temporarily disabled due to work-related injuries. *Adams v. Lawrence Township Board of Supervisors,* 621 A.2d 1119 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 536 Pa. 631, 637 A.2d 291 (1993). Heart and Lung Act benefits can be terminated when: (1) the claimant is able to return to work because his disability ceases; or (2) the claimant's disability is determined to be permanent as opposed to only temporary. *Williams v. Department of Corrections,* 164 Pa.Cmwlth. 224, 642 A.2d 608 (1994). We have established that an injured police officer receiving Heart and Lung Act benefits has a constitutionally protected property right in those benefits. *Adams.* Accordingly, they may not be terminated without conducting a full due process hearing in which the employer establishes one of the two bases of termination. *Williams.*

In the instant case, a termination hearing was held on August 19, 1994, but the Commissioner determined that Gwinn's Heart and Lung Act benefits should be terminated retroactive to the date when Gwinn was examined by Dr. Richter and determined to be fit to return to work.

█ Gwinn contends that the Commissioner erred in retroactively terminating his benefits because due process requires that a hearing must be conducted *prior to* the divestiture of Heart and Lung Act benefits. Conversely, PSP argues that due process only requires that a due process hearing be conducted before the decision to terminate a claimant's benefits, but that benefits need only be paid until the time when the disability ceases, regardless of whether that date precedes the hearing.

A review of the relevant case law reveals that we have previously addressed this issue, in a case involving a township police officer. *Wydra v. Swatara Township,* 136 Pa. Cmwlth. 164, 582 A.2d 710 (1990).

In *Wydra,* Swatara Township terminated Wydra's Heart and Lung Act benefits on the basis that his disability was permanent, without affording him a full due process hearing. Subsequently, however, the Civil Service Commission (CSC) conducted a termination hearing which comported with all the due process requirements of the Local Agency Law,[5] and upheld the termination of Wydra's benefits. On appeal to this Court, we ordered the Township to reinstate Wydra's Heart and Lung Act benefits for the period of time between the date the Township had ceased paying benefits until the date of the CSC determination upholding termination *subsequent* to the due process hearing, finding that the benefits should have continued until that (and not the date on which the Township Board of Commissioners determined that his disability was permanent *prior* to the due process hearing).

5. 2 Pa.C.S. §§ 551–555, 751–754. Wydra's hearing was conducted pursuant to the provisions of Local Agency Law. However, the *Wydra* court stated that "[f]or our purposes here we hold that there is no substantive difference between the two laws [Local Agency Law and Administrative Agency Law] nor their applicability to the police officers, whether state or local, who are provided for under the Heart & Lung Act...." *Wydra,* 582 A.2d at 713. Accordingly, the analysis in *Wydra* is applicable to the instant case.

Following the precedent of *Wydra*, therefore, we hold that the Commissioner in this case improperly retroactively terminated Gwinn's Heart and Lung Act benefits and that such benefits must be reinstated from the date of retroactive termination on February 24, 1994 through the date of the Commissioner's final adjudication on January 12, 1995.

### RELEVANT EVIDENCE

■ Gwinn argues that the evidence concerning his failure to attend scheduled IMEs [6] and his disciplinary records [7] were erroneously admitted in the termination proceeding. Specifically, Gwinn argues that this evidence was totally irrelevant to the issue in the termination hearing, that is, whether Gwinn had recovered from the injury.[8]

■ Administrative agencies are not bound by technical rules of evidence at agency hearings and generally all relevant evidence of reasonably probative value may be admitted. Section 505 of the Administrative Agency Law, 2 Pa.C.S. § 505. An agency has broad discretion under this rule in admitting or rejecting evidence. *Stump v. Department of Labor and Industry,* 154 Pa.Cmwlth. 471, 624 A.2d 229 (1993).

While Gwinn's doctors relied in great part on Gwinn's subjective complaints in forming their opinions, Dr. Richter specifically concluded that Gwinn was malingering. Thus, we find that the evidence regarding Gwinn's disciplinary actions and his failure to attend IMEs was properly considered by the fact finder for the purpose of establishing or refuting Gwinn's credibility.

### SUBSTANTIAL EVIDENCE

Gwinn's final contention is that the Commissioner's adjudication was not supported by substantial evidence. Specifically, Gwinn argues that (1) Findings of Fact Nos. 5, 7–9 & 19 are erroneous; (2) the Commissioner failed to set forth the reasons why he rejected Gwinn's medical evidence; and (3) the Commissioner failed to make a specific finding that he accepted Dr. Richter's opinion as credible.

First, Findings of Fact Nos. 7–9 and 19 discuss Gwinn's failure to attend scheduled IMEs. Our review of the record reveals that these findings are supported by the testimony of Kim Studenroth, a personnel analyst for PSP, as well as PSP's Exhibit No. 7, the records of a prior Workers' Compensation proceeding. *See* Studenroth's Deposition at 17–21, R.R. at 24a–28a; Utilization Review Determination Face Sheet, R.R. at 1219.

■ Second, the case law is clear that with respect to Pennsylvania's administrative agency proceedings the fact finder is not required to issue findings specifically rejecting each and every allegation that is made by a party. *Roth v. Workmen's Compensation Appeal Board (Armstrong World Industries),* 128 Pa.Cmwlth. 1, 562 A.2d 950 (1989). Accordingly, although the Commissioner did not explain specifically why he rejected Gwinn's evidence regarding his injury, this was not fatal to the adjudication.

■ Finally, although the Commissioner did not make a specific finding as to the credibility of Dr. Richter, it is clear from a review of Finding of Fact No. 23 and Conclusion of Law No. 5 that the Commissioner believed and relied upon Dr. Richter's testimony. Finding of Fact No. 23 states that,

[o]n February 24, 1994, Dr. Richter examined Claimant and reported from a medical point of view that Claimant was malinger-

---

6. This evidence included an interlocutory order of the Workers' Compensation Judge requiring Gwinn to attend an IME on November 3, 1995, as well as the evidence listed, *supra* note 3.

7. The disciplinary reports contained information that Gwinn worked as a "bouncer" for a bar during the time he was receiving Heart and Lung Act benefits, that he failed to cooperate with a state police internal investigator and that he refused to maintain a telephone as per PSP regulations.

8. Petitioner also argues that the arbitrator improperly sustained PSP's objection to Petitioner's cross examination of a PSP witness regarding PSP's priority in scheduling termination cases. Petitioner failed, however, to raise this issue in his "Brief on Exceptions" when he appealed the arbitrator's decision to the Commissioner. Therefore, pursuant to Section 703 of the Administrative Agency Law, 2 Pa.C.S. § 703, this issue is waived.

ing, and the Claimant required no chiropractic care, no medical care, no physical therapy and that there was no limitation on his ability to perform work as a State Trooper. Dr. Richter released Claimant to full duty.

Further, the Commissioner stated in Conclusion of Law No. 5 that: "[c]laimant did attend an examination by Dr. Richter on February 24, 1994, at which time Dr. Richter concluded Claimant was fit for duty and had been malingering." Accordingly, we hold that the Commissioner did not err in failing to make a specific finding as to the credibility of PSP's medical expert. *Accord Forest Area School District v. Shoup*, 153 Pa. Cmwlth. 423, 621 A.2d 1121, 1124 (1993) ("The Secretary [of the Department of Education] is not required to make specific findings as to the credibility of each and every witness where the decision itself reflects which witnesses were believed and upon whose testimony the Secretary relied.").

The Order of the Commissioner is affirmed insofar as it terminated Gwinn's Heart and Lung benefits but, is modified to reinstate Gwinn's benefits for the period from February 24, 1994 until January 11, 1995; his benefits are terminated as of January 12, 1995.

### *ORDER*

NOW, December 11, 1995, the order of the Commissioner of the Pennsylvania State Police in the above-captioned matter is affirmed insofar as it terminated Rodney L. Gwinn's Heart and Lung benefits. The order is modified to reinstate Gwinn's benefits for the closed period from February 24, 1994 to January 11, 1995. Those benefits are terminated as of January 12, 1995.