IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Antoine Acosta,                :
           Appellant            :
                                    :
      v.                          :
                                    :    No. 286 C.D. 2023
City of Philadelphia           :    Submitted: June 3, 2025

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE STACY WALLACE, Judge

OPINION BY
JUDGE COVEY                                 FILED: August 1, 2025

Antoine Acosta (Acosta) appeals from the Philadelphia County Common Pleas Court's (trial court) March 10, 2023 order affirming the City of Philadelphia (City) Heart and Lung Act (HLA)[1] Board of Arbitration's (Board) June 23, 2022 decision that terminated Acosta's HLA benefits.[2] Acosta presents four issues for this Court's review: (1) whether the trial court applied an erroneous standard of review, based on a finding that this matter involves a Policemen and

---

[1] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637-638.

[2]      The HLA "provides police officers and other public safety employees, who are temporarily unable to perform their duties because of a work injury, their full salar[ies]." *Stermel v. Workers' Comp. Appeal Bd. (City of Phila.)*, 103 A.3d 876, 877 (Pa. Cmwlth. 2014); *see* Section 1 of the [HLA], 53 P.S. § 637. "[T]he purpose of providing for full salary is to assure those undertaking dangerous employment in certain institutions will continue to receive full income if they are injured while performing their duties." *Lynch v. Com[monwealth] of Pa. (Workers' Comp. Appeal Bd.)*, 275 A.3d 1130, 1137 (Pa. Cmwlth. 2022).

*Dep't of Corr. v. Pa. State Corr. Officers Ass'n*, 308 A.3d 953, 955 n.1 (Pa. Cmwlth. 2024).

Firemen Collective Bargaining Act, commonly known as Act 111,[3] arbitration, rather than a local agency decision subject to Administrative Agency Law;[4] (2) whether the trial court and the Board failed to identify and/or address all issues raised, failed to provide a sufficient, reasoned explanation for the decision reached, supported by competent evidence, and prevented access to medical evidence, denied cross-examination, and relied on hearsay evidence; (3) whether the trial court and the Board failed to determine that the City waived issues not timely pled/raised, and altered the theory of relief after the evidentiary record was closed - to Acosta's prejudice; and (4) whether the trial court and the Board lacked jurisdiction to address constitutional issues related to the usurping of legislative authority, the restriction of injured officers' medical treatment to approved providers, and reliance on only approved provider opinions. After review, this Court affirms.

The City's Police Department (Department) employs Acosta as a police officer. As such, he is a member of the Fraternal Order of Police, Lodge No. 5 (FOP). The FOP, as the exclusive bargaining unit for City police officers, including Acosta, collectively bargained for a Settlement Agreement under Act 111 that created the Department's current HLA system.[5] *See* Board Dec. at 3-4 (Reproduced Record (R.R.) at 312a-313a).[6] According to the Board, the Settlement Agreement

---

[3] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1-217.12.

[4] 2 Pa.C.S. §§ 501-508, 701-704.

[5] Neither the collective bargaining agreement nor the Settlement Agreement are included in the Reproduced Record.

[6] With the Reproduced Record, Acosta filed an Explanation of Record, wherein he detailed:

> 3. Both Counsel for [Acosta] and Counsel for [the City] sought copies of any [h]earing transcripts, and/or a complete copy of 'The Record' from the proceedings below, but were informed that there are no [h]earing transcripts, nor an 'Official Record' of the proceedings.
>
> 4. Counsel for the parties sought to re-create the [r]ecord, and have identified exhibits which are agreed upon, but there were several

2

also adopted a Memorandum of Understanding (MOU) outlining the HLA process before the Board.[7] *See id.*; *see also* R.R. at 144a-161a. Specifically, the MOU grants the Board the authority to decide and resolve all HLA benefit disputes. *See* R.R. at 144a, 147a-148a. Article IV, Section 3(b) of the MOU further specifies that the Board's decision "shall be final and binding on all concerned and shall have full legal effect of, and shall in all respects be entitled to receive finality accorded to, an arbitration award issued pursuant to and under the parties' [collective bargaining agreement]."[8] R.R. at 153a. Acosta is also subject to the Department's Directive 12.14 (Injuries on Duty and Other Service Connected Disabilities) (Directive 12.14). *See* R.R. at 128a-143a.

While on duty on February 22, 2020, Acosta sustained injuries to his left wrist, neck, and back when his patrol car was struck by another vehicle.[9] Although he did not complain of pain at the accident scene, Acosta began

---

'disputed' items, preventing a mutually satisfactory Itemization of the Record.

5. Below is [Acosta's] best effort to identify the items agreed upon, disputed, and the [d]ecisions and post-decision filings applicable to this [a]ppeal.

R.R. at iv. "Act 111 arbitration hearings between the City and [the] FOP are normally conducted without the presence of a stenographer. . . . Thus, this Court was constrained to rely upon the briefs and opinions below in construing this history." *City of Phila. v. Fraternal Ord. of Police Lodge No. 5 (Breary)*, 985 A.2d 1259, 1264 n.4 (Pa. 2009).

[7] The MOU was effective on October 28, 2003. *See* R.R. at 114a-154a. The City and the FOP modified the MOU on April 3, 2008, by Compromise Agreement. *See* R.R. at 155a-161a.

[8] According to the Board, a 2009 Act 111 interest arbitration award added the following language, that has since been incorporated into the City's and the FOP's collective bargaining agreement: "The [Board] shall continue to have authority to issue whatever orders are necessary to achieve justice in the administration of the [City's and the FOP's] agreement to resolve [HLA] disputes." R.R. at 314a.

[9] Acosta injured his neck and back in two prior non-work-related motor vehicle accidents (on December 30, 2018 and September 20, 2019), and was continuing to treat with John Pandolfo, D.C., for those injuries when the February 22, 2020 accident occurred. However, his injuries from the previous accidents did not prevent him from working full duty for the City. *See* Trial Ct. Op. at 2; *see also* City Br. at 1; R.R. at 9a, 37a, 212a-213a, 284a.

experiencing neck, back, and left arm pain while completing paperwork at the precinct approximately 30 to 45 minutes later, which he reported to his supervisor and treated for at Roxborough Hospital. *See* R.R. at 14a-19a, 51a-53a, 229a. Pursuant to paperwork he received upon release from Roxborough Hospital, Acosta thereafter began treatment with the City's workers' compensation medical provider, WORKNET. *See* R.R. at 20a. On February 26, 2020, the City recognized Acosta's February 22, 2020 injuries as work-related and began paying him HLA benefits.[10]

After Acosta felt that he was not getting necessary treatment from the WORKNET physicians, pursuant to Directive 12.14, he contacted the Department's Safety Office and determined that he could transfer his treatment from workers' compensation to HLA and choose from two approved HLA providers - one of whom was Paul J. Sedacca, M.D. (Dr. Sedacca).[11] *See* R.R. at 20a-23a, 76a, 143a, 186a, 208a. Once he received FOP approval, Acosta began treating with Dr. Sedacca. *See* R.R. at 30a-31a, 187a. However, after the City denied Acosta's workers' compensation claim, Dr. Sedacca stopped treating him for a time. *See* R.R. at 31a, 38a, 191a-193a, 214a. Because Acosta felt that he still required treatment, on September 5, 2020, he began seeing John Pandolfo, D.C. (Dr. Pandolfo), the chiropractor with whom he treated for his two prior non-work-related injuries, but

---

[10] On May 26, 2020, Acosta filed a Petition to Claim Workers' Compensation Benefits with the Department of Labor and Industry.

By letter dated September 29, 2020, the City notified Acosta that his February 22, 2020 accident was not related to his service, and his absence from duty would be charged against his accrued personal leave. However, on May 28, 2021, the Board reinstated Acosta's HLA payments retroactive to September 29, 2020. *See* R.R. at 96a.

[11] Sections 6 and 12 of the Compromise Agreement offers police officers the option to transfer care from workers' compensation providers to an HLA provider. *See* R.R. at 156a-157a. Section 1.A of Directive 12.14 requires "[a]ll employees who incur service-connected injuries . . . [to] be treated at an approved City [n]etwork [p]rovider[,]" R.R. at 129a, listed in Appendix A, Section 2 (Recommended Heart and Lung Medical Panel). *See* R.R. at 142a-143a.

4

who was not one of the City's approved HLA physicians.[12] *See* R.R. at 31a-32a, 37a, 187a-188a, 195a, 214a-215a.

During his August 6, 2020 workers' compensation and January 10, 2022 HLA depositions, Acosta testified that, although Dr. Pandolfo's adjustments helped his symptoms, *see* R.R. at 64a-65a, his condition had worsened since his February 22, 2020 accident, and he remained unable to work because he could not carry out necessary police officer duties. *See* R.R. at 39a-43a, 54a, 230a. Following an August 31, 2021 examination, Dr. Sedacca concluded that Acosta had "reached a plateau re: any future Rx for injuries," and recommended that Acosta could return to modified work effective September 8, 2021. R.R. at 175a; *see also* R.R. at 174a, 219a-220a, 266a. Acosta signed Dr. Sedacca's City Encounter Form for that visit. *See* R.R. at 174a. On September 8, 2021, the City made an offer to Acosta that he return to light-duty work, transfer his care to the other HLA approved provider, or seek a duty status hearing; Acosta requested a duty status hearing. *See* R.R. at 198a-210a, 217a, 226a-228a. That same day, the City filed a Petition to Terminate Acosta's HLA benefits (Petition) because he refused a light-duty work assignment.[13] On September 9, 2021, Acosta appealed to the Board regarding his duty status.

The Board conducted several hearings, including on December 2, 2021, at which the parties offered, *inter alia*, Acosta's deposition testimony and Dr. Sedacca's August 31, 2021 records;[14] Acosta objected to the latter on hearsay grounds. Acosta also offered Dr. Pandolfo's September 28, 2021 report, wherein

---

[12] Section 1.B of Directive 12.14 allows Department employees to elect to receive treatment from providers who are not approved City network providers, but at the employee's expense. *See* R.R. at 129a.

[13] Section 8.D of Directive 12.14 states: "[When a]n employee carried under the [HLA], who is placed on . . . limited duty by a City [n]etwork [p]rovider [] fails to report to work, the [C]ity will file a Petition to Terminate, Modify[,] or Suspend benefits under the [HLA] [with the Board]." R.R. at 136a.

[14] The City also referenced Dr. Sedacca's October 5, November 2, and November 30, 2021 treatment records that it had yet to receive.

5

Dr. Pandolfo declared, based on Acosta's injuries attributable to the February 22, 2020 accident, that it "would not be advisable" for Acosta to return to police work (in particular, using a firearm and restraining combative subjects) because "[t]he activities and strength needed to perform his job would place [him] in great risk of aggravating his injuries." R.R. at 172a; *see also* R.R. at 168a-171a, 173a. According to the City, it requested to amend the Petition to add the alternate basis that Acosta's February 22, 2020 work injuries were not temporary.[15] The City contends that Acosta did not object to the amendment. Thereafter, the parties submitted position statements and additional medical records.

On December 8, 2021, Acosta filed an objection with the Board to the City's submission of Dr. Sedacca's medical reports as impermissible hearsay. *See* R.R. at 162a-165a. Acosta also sought a ruling from the Board regarding whether the Board would consider Dr. Pandolfo's testimony if he submitted it, despite that Dr. Pandolfo was not a City-approved HLA care provider.[16] *See* R.R. at 166a-167a. Acosta was concerned with Section 8.A of Directive 12.14, which specifies that "[t]he duty status of an employee with a service-connected disability will be determined only by doctors at the City [n]etwork [p]rovider[.]" R.R. at 135a.

With its January 21, 2022 position statement, the City again introduced Dr. Sedacca's August 31, 2021 records of Acosta's visit, and added Dr. Sedacca's records related to Acosta's October 5, November 2, and November 30, 2021 visits referenced at the hearing. *See* R.R. at 253a-258a, 265a-271a. In the October 5, 2021 record, Dr. Sedacca observed that Acosta had not returned to light-duty work

---

[15] Section 8.E of Directive 12.14 mandates that the HLA Board shall make the "[d]etermination as to whether or not a disability has developed into a state of permanent or partial or total disability[.]" R.R. at 136a.

[16] Article III, Section 1(a) of the MOU allows a party to take the "deposition of any medical expert or treating physician . . . in order to establish any disputed issue regarding any pending claim." R.R. at 149a.

6

because he felt worse; however, Dr. Sedacca again released Acosta to light-duty work. *See* R.R. at 267a-268a. On November 2, 2021, Dr. Sedacca declared that Acosta had reached maximum medical improvement, and again released Acosta to light-duty work. *See* R.R. at 269a-270a. Dr. Sedacca's November 30, 2021 report also reflects that Acosta had reached maximum medical improvement. *See* R.R. at 271a. Acosta signed Dr. Sedacca's City Encounter Forms for the August 31, October 5, and November 2, 2021 visits. *See* R.R. at 266a, 268a, 270a, 221a-222a. The City added in its January 21, 2022 position statement that it wished to seek termination of Acosta's HLA benefits on the basis that his incapacity was no longer temporary as of November 30, 2021. *See* R.R. at 254a.

On March 22, 2022, Acosta submitted his brief to the Board.[17] *See* R.R. at 281a-306a. Therein, Acosta argued that the City failed to present sufficient, competent, or credible evidence to meet its burden of proving that he was no longer entitled to HLA benefits because his disability status had changed. *See* R.R. at 285a-289a. He added that the City's procedures to implement and enforce the HLA violated the HLA, the Administrative Agency Law, and the Pennsylvania Constitution, particularly his right to due process relative to witness availability and evidence admissibility. *See* R.R. at 285a. Acosta further claimed that the City waived its argument that his HLA benefits should be terminated because his injuries were no longer temporary because the City had not previously raised it. *See* R.R. at 298a.

By April 5, 2022 letter to the Board, the City responded to Acosta's waiver argument, declaring that the City had made the request to amend its appeal

---

[17] In his post-hearing brief, Acosta represented: "An off-the-[r]ecord discussion during the January 25, 2022 [h]earing indicated an [o]fficer may submit whatever evidence [he] wish[es]; but not 'committing' to considering or not considering the opinion of a non-'[a]pproved' [p]rovider. No formal [r]uling was made." Post-Hearing Br. at 12 (R.R. at 293a).

without objection during the December 2, 2021 hearing, and restated the request in its January 21, 2022 position statement. *See* R.R. at 307a-308a.

On June 23, 2022, the Board granted the Petition on the basis that Acosta's injuries resulting from his February 22, 2020 work accident were no longer temporary. *See* Board Dec. at 5 (R.R. at 314a). The Board declared that Article III, Section 1(b) of the MOU authorizes it to rely on medical reports and, in this case, its June 23, 2022 decision rested primarily on *Acosta's evidence*, i.e., his testimony and Dr. Pandolfo's September 28, 2021 report.[18] *See* Board Dec. at 3 (R.R. at 312a); *see also* R.R. at 149a. Acosta appealed to the trial court. On February 16, 2023, the trial court held oral argument. On March 10, 2023, the trial court affirmed the Board's June 23, 2022 decision. *See* R.R. at 336a-337a. Acosta appealed to this Court.[19]

On March 22, 2023, the trial court directed Acosta to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). On March 24, 2023, Acosta filed his Rule 1925(b) Statement. The trial court issued its opinion pursuant to Rule 1925(a) (Rule 1925(a) Opinion) on September 22, 2023.

Acosta first argues that the trial court erroneously applied a standard of review applicable to Act 111 arbitration, rather than Administrative Agency Law

---

[18] The Board did not find it necessary to address the City's appeal seeking to terminate Acosta's HLA benefits on the alternate basis that he refused to return to light-duty work. *See* Board Dec. at 5 (R.R. at 314a).

[19] On July 8, 2024, Acosta filed an application for stay in this Court, representing that there was concurrent workers' compensation litigation and the parties had reached a tentative agreement to resolve all claims and issues pertaining to his injuries. This Court granted the stay on July 10, 2024. The parties filed periodic status reports. On February 28, 2025, the parties asked this Court to lift the stay. By March 31, 2025 Order, this Court lifted the stay and directed that this matter shall proceed to disposition.

applicable to local agency decisions.[20] He specifically claims that, although Act 111 authorized the City and the FOP to create an HLA forum through collective bargaining, it did not make the HLA process an Act 111 arbitration. Acosta further contends that the HLA establishes rights that are not collectively bargained and, because it is a Pennsylvania statute, it should be interpreted and applied consistently across the entire Commonwealth. He asserts that appellate oversight greater than narrow certiorari should be applied to allow the courts to determine whether substantial evidence supported the Board's factual findings.

> Section 1 of Act 111 provides:
>
> Policemen or firemen employed by a political subdivision of the Commonwealth . . . shall, through labor organizations or other representatives designated by [50%] or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions[,] and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of [] [A]ct [111].

43 P.S. § 217.1. Because HLA benefits relate to terms and conditions of employment (i.e., rate of salary and other benefits), they are subject to the collective bargaining process. *See Penn Twp. v. Penn Twp. Police Ass'n* (Pa. Cmwlth. No. 905 C.D. 2007, filed May 13, 2008);[21] *see also Shaw v. Twp. of Aston*, 919 A.2d 303 (Pa. Cmwlth. 2007).

In this case, the MOU that the City and the FOP adopted pursuant to the Settlement Agreement reached through the Act 111 process specifies that it

---

[20] The Local Agency Law, 2 Pa.C.S. §§ 551-555, 751-754, governs practice and procedure before *local* agencies. The Administrative Agency Law on the other hand, applies to *Commonwealth* agencies.

[21] Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a). The unreported cases herein are cited for their persuasive value.

"applies to all proceedings before [a]rbitrators selected by the parties to hear claims filed pursuant to the [HLA]." R.R. at 144a. In MOU Article II, Sections 1(a) and 2(a), the City and the FOP agreed that the Board shall hear and decide all HLA-related claims between and among the City, the FOP, and employees the FOP represents. *See* R.R. at 147a-148a. MOU Article II, Section 2(d) specifically authorizes the Board "to grant, deny, or modify a[n HLA] claim" and "to terminate, suspend[,] or modify [HLA] benefits." R.R. at 148a; *see also* Section 8.D of Directive 12.14, R.R. at 136a. The MOU specifies how the Board shall conduct HLA hearings and decide evidentiary matters. *See* R.R. at 146a-153a. Importantly, MOU Article IV, Section 3(b) declares that the Board's decision "shall be final and binding on all concerned and shall have full legal force and effect of, and shall in all respects be entitled to receive the finality accorded to, an arbitration award issued pursuant to and under the parties' [c]ollective [b]argaining [a]greement" (i.e., an Act 111 arbitration award).[22] R.R. at 153a.

This Court has declared that "Act 111 arbitration panels . . . are not administrative agencies or courts[ but, r]ather, they are bodies of temporary jurisdiction convened to respond quickly and with absolute finality to a specific labor conflict, and then disperse." *City of Phila. v. Fraternal Ord. of Police Lodge No. 5 (Breary)*, 985 A.2d 1259, 1266 (Pa. 2009). Moreover, where, as in the instant matter, the City and the FOP negotiated and agreed to the HLA process set forth in the MOU, that bargained-for process, rather than the Local Agency Law, controls. *See City of*

---

[22] Section 7(a) of Act 111 provides, in relevant part: "The determination of the majority of the board of arbitration . . . shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved. . . . No appeal therefrom shall be allowed to any court." 43 P.S. § 217.7(a). "Despite Act 111's preclusion of appeals, [the Pennsylvania Supreme Court] adopted the narrow certiorari mechanism for a combination of pragmatic, historical, and constitutional reasons." *N. Berks Reg'l Police Comm'n v. Berks Cnty. Fraternal Ord. of Police, Lodge #71*, 230 A.3d 1022, 1033 (Pa. 2020); *see also Town of McCandless v. McCandless Police Officers Ass'n*, 901 A.2d 991 (Pa. 2006).

*Pittsburgh v. Fraternal Ord. of Police, Fort Pitt Lodge No. 1 (Potts)*, 334 A.3d 34, 45 (Pa. Cmwlth. 2025) (emphasis omitted) ("Where a civil service employee is protected by a [collective bargaining agreement], as in this case, the terms of the [collective bargaining agreement] control."); *see also City of Phila. v. Fraternal Ord. of Police, Lodge No. 5*, 723 A.2d 747 (Pa. Cmwlth. 1999).[23]

Although Pennsylvania courts have applied the Local Agency Law to some HLA proceedings and appeals, they have done so only when the parties have not collectively bargained for an HLA arbitration panel to have exclusive jurisdiction over such matters. The cases Acosta cites to support his claim that this appeal is subject to review under the Local Agency Law - *Cunningham v. Pennsylvania State Police*, 507 A.2d 40 (Pa. 1986), *Gilotty v. Township of Moon*, 846 A.2d 195 (Pa. Cmwlth. 2004), and *Sidlow v. Township of Nether Providence*, 621 A.2d 1105 (Pa. Cmwlth. 1993) - are inapposite because they involved appeals from local agency adjudications (i.e., boards of supervisors and civil service commissions), not a negotiated HLA arbitration process.

---

[23] The law is well settled in this Commonwealth that, when parties agree to a collective bargaining agreement, courts are reluctant to disturb the bargained-for rights and duties assented to by the parties. As the Superior Court recognized in *American Telephone [&] Telegraph v. Clifford*[, 593 A.2d 903 (Pa. Super. 1991)]:

> Union contracts generally obtain benefits and rights for union members which exceed those available at law in Pennsylvania, which applies the 'at will' doctrine of employer-employee relationships. As such, to protect these benefits, we have held that the contract is controlling when an issue is raised relating to employer-employee rights and duties. We should not deviate from that principle here.

*Id*. . . . at 905-06.

*City of Phila.*, 723 A.2d at 754 (footnote omitted).

11

Here, in MOU Article IV, Section 3(b), the City and the FOP agreed that the Board's HLA decision is "final and binding" and "shall have full legal force and effect of" an Act 111 arbitration award.[24] R.R. at 153a. Relative to Act 111 arbitration awards, this Court has explained:

> In Act 111 cases, [this Court's] scope of review is limited to "narrow certiorari," which allows inquiry only into: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded his powers; or (4) the deprivation of constitutional rights. [*Pa.*] *State Police v.* [*Pa.*] *State Troopers' Ass*[*'n*] *(Betancourt)*, 656 A.2d 83, 90 (Pa. 1995). If an arbitration award cannot be vacated on one of these bases, then it must be upheld. *Id*. A mere error of law is insufficient to support a court's decision to reverse an Act 111 arbitrator's award. *Appeal of Upper Providence Police Del*[*.*] [*Cnty.*] *Lodge #27 Fraternal Ord*[*.*] *of Police*, 526 A.2d 31[5], 322 (Pa. 1987).

*Borough of State Coll. v. Borough of State Coll. Police Ass'n*, 303 A.3d 248, 255-56 (Pa. Cmwlth. 2023) (quoting *Uwchlan Twp., Pa. v. Uwchlan Twp. Police Ass'n (Uwchlan Twp.)* (Pa. Cmwlth. No. 259 C.D. 2020, filed Oct. 9, 2020, slip op. at 4)). The trial court in the instant matter properly concluded that since the City and the FOP bargained for HLA benefits pursuant to Act 111, "the narrow certiorari standard of review [wa]s appropriate and applicable" to the Board's decision, not the Local Agency Law. Trial Ct. 3/10/2023 Order at 1 n.1 (R.R. at 336a).

---

[24] There are two types of Act 111 arbitrations: Interest arbitration and grievance arbitration. "'Interest arbitration' is the arbitration that occurs when the employer and employees are unable to agree on the terms of a collective bargaining agreement. 'Grievance arbitration' is the arbitration that occurs when the parties disagree as to the interpretation of an existing collective bargaining agreement." *City of Phila. v. Int'l Ass'n of Firefighters, Local 22*, 999 A.2d 555, 558 n.2 (Pa. 2010) (quoting *Town of McCandless*, 901 A.2d at 993 n.2). "[T]he courts have held that disputes regarding entitlement to heart and lung benefits may be resolved through the grievance arbitration process if provided for in a mutually agreed upon [collective bargaining agreement]." *Shaw*, 919 A.2d at 305; *see also Lehigh Cnty. v. Lehigh Cnty. Deputy Sheriff's Ass'n*, 304 A.3d 97 (Pa. Cmwlth. 2023).

Acosta next contends that the trial court and the Board failed to identify and/or address all issues raised. In addition, he asserts that the trial court failed to provide a sufficient, reasoned explanation for the decision reached, supported by competent evidence, particularly relative to Acosta's hearsay objections to Dr. Sedacca's medical reports. Acosta also argues that the trial court prevented him access to medical evidence, denied him the opportunity to cross-exam, and relied on hearsay evidence.

Under narrow certiorari review, this Court may examine the regularity of the Board's proceedings. *See Borough of State Coll.* MOU Article IV, Section 3(a) states, in relevant part: "If requested, the [Board] shall issue a supporting opinion which may contain brief findings of fact, conclusions of law, and an appropriate order based upon such record as may be proper under the circumstances." R.R. at 153a. The Board did just that in this case. It issued an order granting the City's Petition, accompanied by a seven-page opinion in which it explained the basis for its conclusion as follows:

> The central issue presented by this case is whether [Acosta's] injuries are no longer temporary. Dr. Sedacca declared [Acosta] at maximum medical improvement as early as August 31, 2021 ([Acosta] "reached plateau") and on subsequent visits thereafter. [Acosta], however, complains that Dr. Sedacca did not give him adequate care or properly address his medical concerns. Although [Acosta] complied with his monthly visits to Dr. Sedacca, he relied primarily on Dr. Pandolfo for care and treatment of his injuries. In an earlier hearing, the Board agreed to allow [Acosta] to depose or introduce the records of Dr. Pandolfo, a provider not in the City's network. [Acosta] introduced a report from Dr. Pandolfo.
>
> In that September 28, 2021 report, Dr. Pandolfo listed [Acosta's] diagnosis as cervical sprain injuries, cervical radiculitis (left), lumbo-sacral sprain, sciatica, left wrist sprain, and multiple cervical disc lesions. He attributed those findings to the February 22, 2020 accident.

13

Significant to this proceeding, he concluded that it was "unadvisable for [] Acosta to perform the necessary work activity," i.e., police work. He added, "it would be clinically unadvisable for [] Acosta to return to work as a police officer . . . [.] The activities and strength needed to perform his job would place [Acosta] in great risk of aggravating his injuries."

In his testimony before the Board, [Acosta] denied that he could perform even light[-]duty work, estimating he could work "one or two [hours] if that" on "a given day." [Acosta] testified that even in light[-]duty assignments, "you have to do some type of lifting, some type of like physical fitness . . . it's hard."

[HLA] benefits may be terminated when a claimant's injury is no longer temporary. In *Cunningham* . . . , the Pennsylvania Supreme Court held that an injury is not temporary "[where a disability is of indeterminant duration and recovery is not projected in the foreseeable future." In a more recent case, *Gilotty v. Township of Moon*, 846 A.2d 195, 199 (Pa. Cmwlth. 2004), the Commonwealth Court held that an inquiry into the temporary nature of an injury requires a look at the length of disability and the medical prognosis for recovery.

[Acosta] has been out of work since February 22, 2020. He and his treating physicians (Drs. Sedacca and Pandolfo) have not found him recovered sufficiently to perform full-duty work. Dr. Pandolfo does not think even a light[-]duty assignment is advisable. Neither doctor has offered a prognosis for recovery in the short or long term. To the contrary, Dr. Pandolfo does not believe [Acosta] should return to work as a police officer.

In short, the medical evidence confirms that [Acosta's] injuries are of "indeterminant duration and recovery is not projected in the foreseeable future." Pursuant to the holdings in *Cunningham* and *Gilotty*, his injuries are no longer temporary, and [Acosta] is no longer entitled to [HLA] benefits.

14

Board Dec. at 5-7 (R.R. at 314a-316a). The trial court agreed, concluding that the Board "acted appropriately and within the scope of its authority." Trial Ct. 3/19/2022 Order at 1 n.1 (R.R. at 336a-337a); *see also* Rule 1925(a) Opinion at 7-9.

Although the Board did not expressly rule on Acosta's hearsay objections to the City's medical reports in its decision, it clearly discussed the contents and the relative weight afforded not only to those records, but Acosta's testimony and Dr. Pandolfo's September 28, 2021 report, to reach its conclusion. Importantly, the City and the FOP agreed in MOU Article III, Section 1(b) that medical treatment evidence "may be established through the introduction of written reports." R.R. at 149a. The City and the FOP further agreed in MOU Article III, Section 2(b) that medical providers' reports "are presumed admissible without the need for additional testimony unless an objection to the document's admissibility is made prior to the hearing . . . ."[25] R.R. at 151a. In MOU Article IV, Section 1(c), the City and the FOP agreed that "[t]he rules of evidence shall be applied to the same extent and in the same manner as in a labor arbitration." R.R. at 152a. Like Act 111 arbitrations, because Public Employe Relations Act[26] arbitrations are designed to resolve disputes expediently, this Court has declared that labor arbitrators are "not bound by the Pennsylvania Rules of Evidence[]" and, thus, "are not precluded from admitting hearsay . . . evidence."[27] *AFSCME Dist. Council 88 v. Cnty. of Lehigh*, 798 A.2d 804, 808 (Pa. Cmwlth. 2002).

This Court acknowledges that Pennsylvania Rule of Evidence 802 specifically prohibits reliance on hearsay evidence, unless it is otherwise admissible

---

[25] If Acosta disagreed with the Board's procedures, he had the right to file a breach of fair representation claim against the FOP. *See Shaw*.

[26] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-1101.2301.

[27] This statement of law is consistent with Section 554 of the Local Agency Law, which specifies that "[l]ocal agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received." 2 Pa.C.S. § 554.

under one of the hearsay exceptions, other Pennsylvania Supreme Court rules, or by statute. *See* Pa.R.E. 802. Moreover, this Court has declared: "[T]he hearsay rule is not a mere technical rule of evidence, but a fundamental rule of law which ought to be followed by agencies when *facts crucial to the issue* are sought to be placed on the record . . . ." *Ray v. Civ. Serv. Comm'n of Borough of Darby*, 131 A.3d 1012, 1024 (Pa. Cmwlth. 2016) (quoting *A.Y. v. Dep't of Pub. Welfare, Allegheny Cnty. Child. & Youth Servs.*, 641 A.2d 1148, 1151 (Pa. 1994) (emphasis in original)). Accordingly,

> [this Court] ha[s] consistently applied the following standard, referred to as the *Walker* Rule, to determine whether hearsay evidence is admissible at administrative proceedings:
>
> > (1) **Hearsay evidence**, [p]**roperly objected to**, **is not competent evidence to support a finding of** [an agency][;]
> >
> > (2) **Hearsay evidence**, [a]**dmitted without objection**, **will be given its natural probative effect and may support a finding of** [an agency], [i]**f it is corroborated** by any competent evidence in the record, but a finding of fact based [s]oley [sic] on hearsay will not stand.
>
> *Rox Coal Co. v. Workers' Comp. Appeal Bd. (Snizaski)*, . . . 807 A.2d 906, 915 ([Pa.] 2002) (citing *Walker v. Unemployment Comp. Bd. of Rev*[.], . . . 367 A.2d 366, 370 ([Pa. Cmwlth.] 1976)).

*Lancaster Cnty. Child. & Youth Servs. Agency v. Dep't of Hum. Servs.*, 235 A.3d 402, 411 (Pa. Cmwlth. 2020) (emphasis added).

Here, pursuant to MOU Article III, Section 2(b), a hearsay objection to a medical report had to be made "prior to the hearing." R.R. at 151a. It is not clear in the record before this Court whether Acosta lodged a hearsay objection to Dr. Sedacca's records *prior* to the Board's hearing. Notwithstanding, the Board relied

most heavily on Acosta's testimony and Dr. Pandolfo's report to conclude that Acosta's February 22, 2020 work injuries were not temporary, which the MOU and the law permitted it to do. Thus, although the Board may not have expressly ruled on Acosta's hearsay objections, it provided a sufficient, reasoned explanation for the decision it reached, supported by competent evidence, primarily evidence Acosta presented.[28] The weight the Board gave the evidence is beyond the scope of narrow certiorari. Accordingly, the trial court did not err by upholding the Board's decision.

Acosta also maintains that the trial court and the Board failed to determine that the City waived issues not timely pled/raised, and altered the theory of relief after the evidentiary record was closed - to Acosta's prejudice. Specifically, Acosta claims that the City's Petition was initially based on the theory that an approved provider declared Acosta was capable of returning to work, but later sought to amend the Petition to add that Acosta's injury was no longer temporary, and it was the latter theory on which the Board terminated his HLA benefits.

---

[28] Notably,

> [t]he standard by which [this Court] review[s] an arbitrator's determination . . . depends on the nature of the issue in the case. [*Pa.*] *State Police v.* [*Pa.*] *State Troopers Ass*[*'n*], 840 A.2d 1059 (Pa. Cmwlth. 2004)[.] . . . **Where resolution of the issue** turns on a pure question of law, or the application of law to undisputed facts, our review is plenary. [*Town of McCandless*]. However, where it **depends upon fact-finding or upon interpretation of the collective bargaining agreement**, [**this Court**] **appl**[**ies**] **the extreme standard of deference applicable to Act 111 awards**; that is, [**this Court**] [**is**] **bound by the arbitrator's determination of these matters even though** [**this Court**] **may find it to be incorrect**. *City of Phila*[*.*] *v. Fraternal Ord*[*.*] *of Police Lodge No. 5*, 932 A.2d 274 (Pa. Cmwlth. [2007]), [*aff'd*, 985 A.2d 1259 (2009)]; [*Pa.*] *State Police*.

*Borough of Montoursville v. Montoursville Police Bargaining Unit*, 958 A.2d 1084, 1089 (Pa. Cmwlth. 2008) (emphasis added). Therefore, neither the trial court nor this Court may rule upon the value of the evidence presented to the Board.

The parties agree that the City's Petition sought termination of Acosta's HLA benefits for failure to report for a light-duty assignment. Based on the documents the parties submitted to this Court, the City requested in its post-hearing January 21, 2022 position statement: "[**The City**] **would further seek relief as of** [**November 30**, **2021**] **on the basis that** [Acosta's] **incapacity is no longer temporary** as Dr. Sedacca has indicated that [Acosta] has reached . . . []maximum medical improvement[]." R.R. at 254a (emphasis added). In its April 5, 2022 letter to the Board, the City's counsel represented:

> [D]uring each hearing when there was medical evidence obtained that reflected [Acosta] was released to work as of a later date than originally alleged, I asked that the pending [P]etition be amended to include a request for relief as of the later date. Further, **I specifically indicated both on the record at the hearing convened on** [**December 2**, **2021**] **and in my follow up correspondence that when the medical evidence supported** [Acosta's] **incapacity was no longer temporary that there be a request for relief based upon** [Acosta's] **incapacity no longer being temporary**.
>
> Specifically, in my [p]osition [s]tatement of [January 21, 2022], it was indicated, "I would note at the last hearing of [December 2, 2021], I noted that I had just recently received the notes from the visits of [October 5, 2021] and [November 2, 2021,] such that I was amended [sic] the requested relief to also request relief as of the dates of those evaluations. **I would further seek relief as of** [**November 30**, **2021**,] **on the basis that** [Acosta's] **incapacity is no longer temporary** as Dr. Sedacca has indicated that [Acosta] has reached . . . []maximum medical improvement[]." There was **never any objection raised on the record to the requested amendments** to the original Petition filed seeking to stop the payment of full salary benefits. It is obvious that, contrary to [Acosta's] brief, **this issue was not something that was raised for the first time in the** [**City's**] **closing brief**. Accordingly, this issue should specifically be found to have been raised during the course of the [HLA]

18

proceeding with [Acosta] not raising any objection to these amendments until the filing of [Acosta's] brief.

R.R. at 307a-308a (emphasis added). Acosta retorts that "**the first '[r]ecord' of a new theory of relief** [**wa**]**s** the City's [post-hearing] brief" **after the record was closed**. Acosta Br. at 25 (bold emphasis added; underline emphasis in original).

While the Board did not specifically rule on the City's Petition amendment request in its decision, it clearly granted the Petition on the basis that Acosta's injuries were not temporary. *See* Board Dec. at 5 (R.R. at 314a). Indeed, "[a]n arbitrator exceeds h[is] jurisdiction when []he addresses issues not properly submitted to h[im]." *Borough of State Coll.*, 303 A.3d at 257. Despite that neither the MOU nor Directive 12.14 specify whether or how the City could amend its Petition, this Court has recognized that "an arbitrator has wide latitude to address any issues that are properly submitted and '**may speak to an issue if it is reasonably subsumed within the issues properly before the arbitration panel**.'" *Potts*, 334 A.3d at 46 (emphasis added) (quoting *Michael G. Lutz Lodge No. 5 v. City of Phila.*, 129 A.3d 1221, 1231 (Pa. 2015)).

Section 1(a) of the HLA grants Department police officers' full compensation during the time they are "temporarily incapacitated from performing [their] duties[.]" 53 P.S. § 637(a). The Pennsylvania Supreme Court has explained:

> Given the purpose of the [HLA], [the Supreme Court has] concluded that it was **intended to cover only those disabilities where the injured employees were expected to recover and return to their positions in the foreseeable future**. Where a disability is of indeterminate duration and recovery is not projected in the foreseeable future, it cannot be deemed "temporary" within the meaning of the [HLA]. The [employer] has no obligation to provide compensation or to pay medical bills for permanent incapacity.

19

*Cunningham*, 507 A.2d at 43-44 (emphasis added; citation omitted). Thus, this Court has concluded that an employer has the statutory right to seek to terminate a claimant's HLA benefits if (1) he is able to return to work or (2) his disability is no longer temporary. *Gwinn v. Pa. State Police*, 668 A.2d 611 (Pa. Cmwlth. 1995). Because "an injured police officer receiving [HLA] benefits has a constitutionally protected property right in those benefits[,] . . . they may not be terminated without conducting a full due process hearing in which the employer establishes one of the two bases of termination." *Id*. at 613.

Consistent with that law, Article I, Section 1 of the MOU authorizes the Board to decide all HLA-related claims, *see* R.R. at 144a, and clearly describes the HLA hearing process. *See* R.R. at 147a-153a. In addition, Section 8.D of Directive 12.14 declares relative to "[a]n employee carried under the [HLA], who is placed on . . . [l]imited [d]uty by the City [n]etwork [p]rovider **but fails to report to work, the [C]ity will file a Petition to Terminate**, Modify[,] or Suspend **benefits under the [HLA]** to the [Board]." R.R. at 136a (emphasis added). Section 8.E of Directive 12.14 adds that a "[d]etermination as to whether or not a disability has developed into a state of permanent and partial or total disability is based on . . . [f]or [HLA c]ases, the decision by the [Board.]" *Id*.

The City's request for Acosta to return to light-duty work triggered his refusal (on the basis that he was still injured and he could not return to work in any capacity), his appeal to the Board for a determination of his duty status, and the City's Petition. Acosta was on notice that the Board had exclusive jurisdiction to decide all HLA-related matters *pursuant to the HLA*, which authorized the City to terminate Acosta's HLA benefits after he refused to return to light-duty work, either because (1) he was unable to return to work or (2) his disability was no longer temporary. Neither the City nor the Board prevented Acosta from presenting any evidence; in fact, the Board admitted and credited what he offered. Regardless of

whether or when the City requested to amend the Petition or whether the Board expressly granted such a request, Acosta was not prejudiced. Therefore, the Board did not exceed its jurisdiction by granting the City's Petition on the basis that his February 22, 2020 work injuries were no longer temporary. Accordingly, the trial court did not err by upholding the Board's decision.

Lastly, Acosta argues that the trial court and the Board lacked jurisdiction to address constitutional issues, particularly related to the usurping of legislative authority, the restriction of injured officers' medical treatment to approved providers, and reliance only on approved provider opinions.

Under narrow certiorari, the trial court and this Court may evaluate an employee's claim that his constitutional rights have been violated. *Borough of State Coll.* In addition, this Court acknowledges:

> As the Supreme Court of the United States has oft-stated, parties are technically deprived of their procedural due process rights under the Fourteenth Amendment [to the United States Constitution, U.S. CONST. amend XIV,] when they are not afforded full opportunities to present evidence before a court. Identical considerations must be given under [a]rticle I, [s]ection 1 of the Pennsylvania Constitution[, PA. CONST. art. I, § 1,] as well.

*Breary*, 985 A.2d at 1270 (citations omitted). However, this Court has also concluded that "benefits . . . under the [HLA] or through the collective bargaining agreement between the City and [the FOP], are not specifically constitutionally protected rights, but, rather, are the product of legislative action by the General Assembly or by the City [] undertaken to effectuate public policy." *City of Phila.*, 723 A.2d at 752-53.

Here, the Board held:

> The Board exists as a result of the collective bargaining process for police officers and firefighters pursuant to Act 111 . . . . The Board follows the procedures and standards

21

mutually agreed to by [the City and the FOP] and/or imposed by an interest arbitration panel. Among those procedures, the [City and the FOP] have agreed to a network of medical providers that includes providers recommended by the FOP. The [City and the FOP] have also agreed to allow medical reports in lieu of testimony to be introduced into evidence. The City and the FOP, negotiating on behalf of its members, agreed to those provisions. [Acosta], as a member of the FOP, is bound through the collective bargaining relationship to follow those procedures.

Board Dec. at 5 (R.R. at 314a). The trial court agreed, similarly concluding:

While [Acosta] raises additional due process and constitutional arguments, such arguments are outside the jurisdiction of this [trial c]ourt to consider. As set forth in the [Board's] decision of June 23, 2022, the [Board] exists as a result of negotiations leading to the [collective bargaining agreement]. To the extent [Acosta] argues that the [Board] or the review process is unconstitutional or improper, the forum for such an argument lies elsewhere.

Trial Ct. 3/10/2023 Order at 2 n.1.

Indeed, all of Acosta's purported constitutional issues - whether the authority the City and the FOP granted the Board usurps legislative authority, the restriction of injured officers' medical treatment only to approved providers, and reliance only on approved provider opinions - are matters the City and the FOP expressly agreed upon pursuant to Act 111 when creating the Board and detailing the manner in which HLA matters would be reviewed and decided. Acosta's dissatisfaction with the FOP's agreement with the MOU and the competency of the evidence upon which the Board relied are beyond the narrow certiorari review to which the trial court and this Court are limited. Accordingly, the trial court did not err by upholding the Board's decision.

22

Based on the foregoing, the trial court's order is affirmed.[29]

_____
ANNE E. COVEY, Judge

---

[29] "If an employee's injury is found to be 'permanent' rather than temporary, that employee should not continue to receive benefits under the [HLA,] but should properly receive workers' compensation benefits." *Heath v. Pa. Bd. of Prob. & Parole*, 869 A.2d 39, 44 (Pa. Cmwlth. 2005).

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Antoine Acosta,                   :
           Appellant       :
                            :
        v.                 :
                            :   No. 286 C.D. 2023
City of Philadelphia          :

## O R D E R

AND NOW, this 1st day of August, 2025, the Philadelphia Common Pleas Court's March 10, 2023 order is affirmed.

_____
ANNE E. COVEY, Judge